**Delmond RANDLE, Appellant,**

v.

**The STATE of Texas, Appellee.**

**No. 54341.**

Court of Criminal Appeals of Texas, Panel No. 1.

May 10, 1978.

Russell C. Busby, Amarillo, for appellant.

Tom Curtis, Dist. Atty. and Bruce Sadler, Asst. Dist. Atty., Amarillo, for the State.

Before DOUGLAS, PHILLIPS and W. C. DAVIS, JJ.

## OPINION

PHILLIPS, Judge.

This is an appeal from a conviction for the offense of murder. V.T.C.A., Penal Code, Sec. 19.02. Punishment was assessed by the jury at 15 years imprisonment.

The evidence adduced at trial revealed that on May 14, 1975, the appellant shot and killed Weldon Artis, also known as Donell Collins, in the Blue Moon Recreation Hall in Amarillo. Officer Shelby Vitatoe testified that appellant voluntarily came to the police department on May 14 and, after having been apprised of his rights, gave the following statement:

"My name is Delmond Ray Randle. About 5:20 pm today I was at the Tip Top Cafe and my brother Robert Randle and I were watching Donell Collins and Gary Burks shoot pool. Collins was apparently losing the game and he said to my brother 'hey nigger you gonna bet or not.' My brother said he was and Collins said 'Hey nigger I will make you and your brother both get out of here.' Collins then went over to this dude named Charles who is a white dude also called Superfly and said, 'Hey man give me my gun.' Charles didn't give him a gun that I could see and then Collins said to me, 'Hey man I f...ed your old lady and put scars between her legs and I drove your GTO.' I then told Collins that I would bring my old lady and then he could tell both of us that. I then left and went home and got my 45 cal. automatic and then I got my wife and we both went to the Blue Moon Cafe. This was about 5"20pm. I walked inside and Collins was inside and I told him 'Hey man you come and tell my old lady what you told me earlier.' Collins then said okay. I got loud with him and said 'Come on man I gotta go I got hings (sic) to do.' Then Collins said, 'Hey nigger you better go on before I kill you.' He said that two times and started towards me and I reached in the waistband at my back and took my gun out and cocked it and then Collins took off running. I fired one time at him and it hit him. After he went down I shot him three or four more times."

Dr. Jose A. Diaz-Esquivel, a pathologist, testified that the deceased, Weldon Artis, died from gunshot wounds. There were seven entrance wounds, four to the left side of the back and three in the left arm.

Robert James Randle, the appellant's brother, testified that on May 14 he was at the Tip Top Cafe watching the deceased play pool with Gary Burks. When the appellant walked in, the deceased said, "Here comes another one of them Randles," and then told appellant he was having an affair with the appellant's wife. The appellant and the deceased began "having words" when the deceased pulled a gun he had obtained from Charles Walser. The appellant left the premises. Robert Randle also left and went to a service station for gas. He returned to the Blue Moon Recreation Hall, where the deceased was playing pool. The appellant and his wife arrived at approximately the same time. After they went into the recreation hall, the appellant asked the deceased to prove what he had stated earlier. The deceased then stated,

"Oh, man, go on and don't make me have to hurt you," and started walking towards the appellant. The appellant then pulled a gun and cocked it. The deceased turned and began to run when the appellant fired two shots at the deceased. The deceased fell and the appellant fired several more shots at him. The appellant then stated, "I hope you die." Robert Randle did not see the deceased with a gun at the recreation hall.

The appellant testified in his own behalf and stated that on May 14, after he left the Tip Top Cafe, he went home and retrieved a .45 automatic in order to protect himself. The appellant then called the police and stated, "I told them there was a dude down here insulting my old lady, and he threatened me with a gun. I told them if you all wasn't going to do anything about it, that I would. I say, if you all wouldn't do anything about it, that you all would have me, and somebody else would have him." The appellant picked up his wife and drove to the recreation hall. After demanding the deceased repeat his earlier statement, the deceased said, "Nigger, you better leave, before I kill you," repeating that statement twice. The deceased then started towards the appellant. The appellant backed away four or five feet and pulled his gun as he was backing away. After cocking the gun, he aimed the gun at the deceased. As appellant aimed, the deceased turned and the appellant fired six shots in rapid succession. The appellant saw the imprint of a gun in the deceased's right front pocket as he approached the appellant. The appellant stated that he believed the deceased could cause him serious bodily injury and that he did not intend to kill the deceased but merely wanted the deceased to apologize for his statements. On cross-examination it was established that the appellant did not see the deceased reach for his pocket after the appellant had pulled a gun, nor did he see the deceased make any aggressive motions.

On rebuttal, Charles Walser testified for the State that he was present at the Tip Top Cafe when the deceased made the derogatory statements to the appellant. Walser had a gun in his possession but never gave it to the deceased while the appellant was present. After the appellant left the cafe, Walser gave the gun to the deceased who pawned the gun at a local liquor store. They then went to the Blue Moon to play pool. When the appellant entered, he demanded the deceased repeat his earlier statements and kept saying, "Come on, cause I got to go." After repeating that three times, the appellant drew his gun, slid the bolt back, and shot the deceased twice. After the deceased fell, the appellant shot him two more times. The appellant then walked over and sat on the edge of the pool table and "took his time shooting him three more times." The appellant then looked at the deceased lying on the floor and stated, "I hope you die, you son-of-a-bitch." Walser testified that the deceased did not have a gun at the time he was killed.

There was testimony that the deceased had been twice convicted for misdemeanor assault and once convicted for carrying a prohibited weapon. Two witnesses testified that the deceased's reputation for being a peaceful and law-abiding citizen was bad.

■ In his second ground of error, appellant contends that the trial court erred in failing to charge the jury on the law of self-defense. In *Gavia v. State,* 488 S.W.2d 420, we stated:

> "In determining whether any defensive charge should be given, the credibility of evidence or whether it is controverted or conflicts with other evidence in the case may not be considered. When a defensive theory is raised by evidence from any source and a charge is properly requested, it must be submitted to the jury. It is then the jurors' duty, under the proper instructions, to determine whether the evidence is credible and supports the defense."

This portion of the *Gavia* case was cited with approval in *Garcia v. State,* 492 S.W.2d 592. The issue presented to this Court is not the truth of the appellant's testimony but rather, if such testimony is believed by the jury, whether a case of self-defense is fairly presented.

In the instant case, the appellant's brother testified that prior to the shooting the deceased had pulled a gun on the appellant at the Tip Top Cafe. The appellant confronted the deceased in the recreation hall in order to demand an explanation of certain statements made concerning appellant's wife. At that time, the deceased threatened appellant, stating, "Nigger, you better leave, before I kill you." The deceased repeated this statement and started towards the appellant. The deceased was a man weighing over 200 pounds and standing approximately 6'5" while the appellant was suffering from a back injury and was wearing a back brace. There was also testimony concerning several prior incidents between the appellant and the deceased. The appellant stated that he was afraid of serious bodily injury as the deceased approached, and he backed away from the deceased four or five feet. As the deceased advanced, the appellant saw a gun in the deceased's right front pocket. The appellant pulled his gun and when the deceased turned, the appellant fired rapidly.

We conclude that this testimony raised the issue of self-defense and that the trial court erred in overruling appellant's objection to the charge. Whether the events actually happened the way appellant testified was a question for the jury, but the jury was denied the opportunity to decide those facts because a charge on self-defense was not given. The jury should have been instructed to decide these facts under the law of self-defense. *Henry v. State,* 164 Tex.Cr.R. 199, 300 S.W.2d 79; *Jones v. State,* Tex.Cr.App., 544 S.W.2d 139; *Rodriquez v. State,* Tex.Cr.App., 544 S.W.2d 382; *Brooks v. State,* Tex.Cr.App., 548 S.W.2d 680; cf. *Berry v. State,* Tex.Cr.App., 504 S.W.2d 501.

■ In addition to his ground of error two, appellant contends that the trial court erred in refusing to allow the appellant to impeach the State's rebuttal witness, Charles Walser, by showing Walser was under indictment in the Potter County Jail for a different offense. In a hearing outside the presence of the jury, it was established that Walser was under a felony indictment for possession of methamphetamine. His bond had been set at $10,000.00. The bond was reduced to $5,000.00, an amount Walser could make, on the day he testified. While the prosecutor stated that there was no deal with the witness for his testimony, the appellant wanted to bring the fact of his incarceration before the jury in order to establish bias and motive for his testimony.

In *Davis v. Alaska,* 415 U.S. 308, 94 S.Ct. 1105, 39 L.Ed.2d 347 (1974), the United States Supreme Court held that a defendant was denied the right of effective cross-examination when the trial court refused to permit the defendant to cross-examine a State's witness concerning his status as a juvenile probationer. The defendant in *Davis* sought to establish the bias or motive of the State's witness, Richard Green, by showing that the witness may have testified under fear and apprehension of probation revocation. In *Davis,* the United States Supreme Court stated:

> ". . . We have recognized that the exposure of a witness' motivation in testifying is a proper and important function of the constitutionally protected right of cross-examination.

> \*   \*   \*   \*   \*   \*

> "We cannot speculate as to whether the jury, as sole judge of the credibility of a witness, would have accepted this line of reasoning had counsel been permitted to fully present it. But we do conclude that the jurors were entitled to have the benefit of the defense theory before them so that they could make an informed judgment as to the weight to place on Green's testimony which provided 'a crucial link in the proof . . . of petitioner's act.' *Douglas v. Alabama,* 380 U.S., at 419, 85 S.Ct., at 1077. The accuracy and truthfulness of Green's testimony were key elements in the State's case against petitioner. The claim of bias which the defense sought to develop was admissible to afford a basis for an *inference* of undue pressure because of Green's vulnerable status as a probationer, . . .." (Emphasis added)

This Court has most recently faced this issue in the case of *Castro v. State,* 562 S.W.2d 252, where, in a unanimous decision, we held:

"As this Court has stated many times, great latitude should be allowed a defendant in showing *any* fact which would tend to establish ill feelings, bias, motive and animus upon the part of any witness testifying against him." [Citations omitted.]

"In *Blair v. State, supra,* we stated that any possible malice, bias or prejudice towards the defendant on the part of the witness is admissible to attack his credibility and to lay the groundwork for possible impeachment. The motives which operate on the mind of a witness when he testifies are never regarded as immaterial or collateral matters. [Footnote omitted.] The defendant may prove facts 'which tend to show bias, interest, prejudice or any other mental state or status which fairly construed might tend to affect his credibility.' See 1 Branch's Ann. P.C.2d Ed. Sec. 185.

"In *Evans v. State, supra,* this Court reversed a conviction where the trial court refused to allow the defendant to show that a witness testifying for the State against the defendant was currently under indictment. We held that the claim of bias, interest and motive which the defense sought to develop was admissible to afford a basis for an inference of undue pressure because of the witness' vulnerable status as an indictee, as well as of the witness' possible concern that he might be a suspect in the offense.

\* \* \* \* \* \*

". . . The inference that the jury *could* have drawn was that Rhoades had a personal interest in helping the prosecution prove its case against appellant and, therefore, may have been an unreliable witness. While the jury may have chosen to reject such an inference, especially since Rhoades denied that he was testifying for the State because of his vulnerable status, this evidence was nevertheless admissible and appellant should have been permitted to prove these facts."

In the instant case, the defense was entitled to demonstrate to the jury the bias or motive of the State's rebuttal witness Walser. The fact that Walser was under indictment was admissible to afford a basis for an inference of undue pressure due to his status as an indictee. As in *Castro,* while the jury may have rejected such an inference, the appellant was nonetheless entitled to bring these facts before the jury.

Further, it cannot be said that the failure by the trial court to allow such cross-examination was harmless in the present case. Walser was the only witness who testified that the appellant killed the deceased deliberately, in a casual fashion "like he was just taking all the time in the world to kill this man." Walser also testified that the deceased had pawned his gun and did not have a gun in his pocket at the time he was killed. Consequently, the appellant was thus denied his right to effectively cross-examine witness Walser "to expose to the jury the facts from which jurors, as the sole triers of fact and credibility, could appropriately draw inferences relating to the reliability of the witness." *Davis v. Alaska, supra,* 415 U.S. at 318, 94 S.Ct. at 1111.

For the reasons stated, the judgment is reversed and the cause remanded.