Sol Shearn **ROVINSKY**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 59546.

Court of Criminal Appeals of Texas, Panel No. 2.

Sept. 10, 1980.

Rehearing Denied Oct. 15, 1980.

William M. Ravkind, George R. Milner, Ronald L. Goranson (on appeal only), Dallas, for appellant.

Henry Wade, Dist. Atty., W. T. Westmoreland, Jr., Douglas D. Mulder and Jon Sparling, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty., Austin, for the State.

Before DOUGLAS, ROBERTS and CLINTON, JJ.

## OPINION

DOUGLAS, Judge.

This is an appeal from a conviction for theft. The court assessed punishment at five years. During the trial the jury was waived and the case was tried before the court.

Rovinsky was employed for seventeen years as an accountant and, later, as the treasurer and chief financial officer of the Zales Corporation. After he was discharged by Zales in February, 1976, he was indicted for embezzling some $600,000 from the corporation. He was acquitted of that charge on November 7, 1976. Two weeks later, he met in a hotel restaurant with Sam Bloom, president of Bloom Advertising, and a close friend of the chief executive officers of Zales. The entire meeting was recorded by investigators of the Dallas County District Attorney's office with the aid of a body microphone worn by Bloom.

Rovinsky told Bloom that he had three commodities that Zales would be interested in: (1) a libel suit against Zales by Rovinsky, (2) a shareholder's suit filed against the officers of Zales with Rovinsky as the shareholder's chief witness, and (3) an investigation of Zales by the Internal Revenue Service with Rovinsky again as the principal witness. He told Bloom that he wanted to meet with a personal representative of Zales to discuss his role in each of these areas. Bloom agreed to set up a meeting with Rovinsky and Ben Lipshy, the chairman of the board of Zales. Bloom's testimony was completely corroborated by the tape recordings of the meeting.

Rovinsky and Lipshy met on three separate occasions during November and December of 1976 in various hotel rooms. All three conversations were taped by employees of the district attorney's office with Lipshy's permission. During these meetings, Rovinsky discussed the possible role he could play in each of the three areas. He stated that he could either implicate all of the corporate officers of Zales in the IRS criminal investigation or could take sole responsibility for the tax fraud himself. He also stated that the other two areas could be similarly resolved. In return for this, he wanted Zales to settle his personal claim against Zales for the ultimately agreed upon sum of four million dollars. Lipshy agreed and, on the last meeting, delivered to Rovinsky a suitcase containing $200,000 in cash. Rovinsky was arrested upon leaving the hotel with the suitcase.

Appellant contends that he was deprived of his right to effectively cross–examine the State's chief witness, Ben Lipshy, when the court sustained the State's motion in limine. Prior to trial, the State filed a motion in limine to restrain appellant from cross–examining Lipshy in a number of areas, including the results of a consent decree between Zales and the Securities and Exchange Commission concerning allegations by Rovinsky of securities fraud, the merits of the shareholder's derivative suit, any indemnity agreements to Zales for improper conduct by its officers, any extra compensation to Zales' employees over and above the published salaries, any conspiracy among Zales' employees to file fraudulent tax returns, a European fund for the illegal purchase of diamonds and for avoiding taxes in Europe and Israel, any conspiracy among Zales' employees for illegal political contributions, the establishment of a Puerto Rican subsidiary to illegally avoid taxes, unlawful kick–back schemes with military officials and post exchanges, Internal Revenue Service investigations and a host of smaller subjects.

■■■■ Rovinsky contended at trial that cross–examination in these areas was necessary to establish Lipshy's motive and bias for making his statements during the tape recorded conversations. Although he contends on appeal that he was denied the opportunity to cross–examine Lipshy as to Lipshy's motives and biases for *testifying at trial*, this ground does not comport with the objection in the court below and, thus, presents nothing for review. *Crocker v. State*, 573 S.W.2d 190 (Tex.Cr.App.1978); *Watkins v. State*, 572 S.W.2d 339 (Tex.Cr. App.1978). Further, although wide latitude should be given an accused to show any fact which would tend to establish ill feeling, bias, motive, or animus on the part of the witness testifying against the accused, see e. g., *Coleman v. State*, 545 S.W.2d 831 (Tex.Cr.App.1977); *Jackson v. State*, 482 S.W.2d 864 (Tex.Cr.App.1972), the trial court has considerable discretion as to how and when the bias may be proven and as to what collateral evidence may be used for that purpose. *Carillo v. State*, 591 S.W.2d

876 (Tex.Cr.App.1979), and cases cited therein. The probative value of the evidence sought to be introduced must be balanced against the prejudicial impact of the evidence, including undue prejudice, embarrassment, harassment to either a witness or a party, and the possibility of undue delay. *Carillo v. State*, supra. Because the evidence omitted in the present case goes only to Lipshy's motives for participating in the blackmail scheme of Rovinsky, i. e., to embarrass or discredit Rovinsky, it cannot be said that the trial court abused its discretion in refusing to allow the cross–examination of Lipshy in these areas.

Finally, any error that might have been committed in restricting the cross–examination was rendered harmless beyond a reasonable doubt. *Harrington v. California*, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969). In *Randle v. State*, 565 S.W.2d 927 (Tex.Cr.App.1978), we held that the failure of the trial court to permit the sought–after cross–examination was not harmless error because the witness in question provided the only evidence of key elements of the offense. See also *Castro v. State*, 562 S.W.2d 252 (Tex.Cr.App.1978). In the present case, Lipshy's direct examination concerned only his version of the three conversations with Rovinsky. This testimony was corroborated in every detail by the admission of the tape recordings. Rovinsky testified and admitted that the statements in the recordings were made. No reversible error is shown.

■■■■ Rovinsky also contends that the trial court erred when it excluded evidence supportive of his defensive theory. Rovinsky argues that Lipshy's sole motive in participating in the scheme and delivering the money was not to ward off an IRS investigation as alleged in the indictment but to cause Rovinsky's arrest and, thus, discredit him in the eyes of the IRS, the SEC and the stockholders. The evidence sought was, essentially, that outlined in the State's motion in limine above. We disagree with appellant's contention. It has long been the rule in this jurisdiction that an owner may aid in

the detection of the commission of a theft by encouragement or participation in its execution so long as the owner does not induce the accused to commit the offense. *Carnes v. State*, 134 Tex.Cr.R. 9, 113 S.W.2d 542 (1938); *Jarrott v. State*, 108 Tex.Cr.R. 421, 1 S.W.2d 619 (1928); *Price v. State*, 55 Tex.Cr.R. 157, 115 S.W. 586 (1909). Thus, evidence of Lipshy's true motive to participate in Rovinsky's arrest was irrelevant. No error is shown.

Rovinsky argues that the trial court erred when it failed to grant his motion to quash because the indictment failed to allege that the threat was communicated to Lipshy. The indictment reads as follows:

"... Sol Shearn Rovinsky hereinafter styled Defendant, on or about the 16th day of December in the year of our Lord One Thousand Nine Hundred and seventy–six in the County and State aforesaid, did unlawfully, knowingly and intentionally appropriate property, namely, current money of the United States of a value of over $10,000.00, from Ben Lipshy, the owner thereof, with intent to deprive the said owner of the said property and without the effective consent of said owner by threatening to accuse the said owner of a criminal offense, namely, a violation of the Internal Revenue Code of the United States."

V.T.C.A., Penal Code, Section 31.03, reads in pertinent part:

"(a) A person commits an offense if he unlawfully appropriates property with intent to deprive the owner of property.

"(b) Appropriation of property is unlawful if:

"(1) it is without the owner's effective consent; ..."

V.T.C.A., Penal Code, Section 31.01(4), defines "effective consent" as follows:

"(4) 'Effective consent' includes consent by a person legally authorized to act for the owner. Consent is not effective if:

"(A) induced by deception or coercion; ..."

V.T.C.A., Penal Code, Section 31.01(1), defines "coercion" in part as follows:

"(1) 'Coercion' means a threat, however communicated:

"* * *

"(C) to accuse a person of any offense; ..."

■ We hold that the indictment sufficiently alleges the fact of the communication of a threat to Lipshy. Article 21.17, V.A.C.C.P., states that statutory language "need not be strictly pursued in the indictment; it is sufficient to use other words conveying the same meaning or which include the sense of the statutory words." In *Chance v. State*, 563 S.W.2d 812 (Tex.Cr. App.1978), this Court held that Article 21.17 applied to all statutory language except where the language is a constituent element of the offense and has acquired a technical meaning by virtue of its express definition in the Penal Code. 563 S.W.2d at 815. The fact of communication of the threat is neither an essential element of the offense of theft, see *Ex parte Cannon*, 546 S.W.2d 266 (Tex.Cr.App.1975), nor is it defined in the Penal Code. Thus, by relying on the commonly accepted meaning of the word "threatening", we hold that the indictment sufficiently alleges the fact of the threat's communication to Lipshy. This contention is overruled.

■ Rovinsky also argues that the indictment was defective because it failed to describe the stolen property with sufficient particularity. See Article 21.09, V.A.C.C.P. The motion to quash, however, asserts that the indictment fails to allege the proper value of the property taken. As such, the motion at trial does not comport with the ground of error raised on appeal and presents nothing for review. *Crocker v. State*, supra; *Watkins v. State*, supra. If we were to get to the present contention, it is noted that the allegation of theft of over $10,000 current money of the United States is sufficient as to value and description.

■ Appellant contends that the trial court admitted the tape recordings of his conversations between himself and Lipshy

and Bloom in violation of 18 U.S.C.A., Section 2511. We do not agree. Section 2511(2)(c) states:

"It shall not be unlawful under this chapter for a person acting under color of law to intercept a wire or oral communication, where such person is a party to the communication or one of the parties to the communication has given prior consent to such interception."

Appellant relies on *United States v. Padilla*, 520 F.2d 52 (1st Cir. 1975), for the proposition that a government agent cannot consent to the interception of an oral communication where the interception occurs in a hotel room rented by the agent and where the "bug" was placed in that room by the agent. Section 2511(2)(c), supra, was limited to those situations where the agent is wearing a body microphone on the theory that an accused has no expectation of privacy that one with whom he converses will not relay that conversation to the police. The First Circuit court held that the expectation of privacy is not relinquished in a hotel room.

We decline to follow this holding and, instead, elect to follow the Fifth Circuit in *United States v. Juarez*, 573 F.2d 267 (5th Cir. 1978). There, Juarez and a government informer held a conversation in Juarez' home. The issue of *Juarez* was the voluntariness of the informer's consent. The court held that his consent to the taping was voluntary, thus bringing the tape recording within the ambit of Section 2511(2)(c). See also *United States v. Mendoza*, 574 F.2d 1373 (5th Cir. 1978).

In *United States v. White*, 401 U.S. 745, 91 S.Ct. 1122, 28 L.Ed.2d 576 (1967), the Supreme Court held that a defendant's expectation of privacy with a government informer would not be constitutionally justifiable, i. e., the Fourth Amendment will not protect such expectations. 401 U.S. at 751–52, 91 S.Ct. at 1126.

"... For constitutional purposes, no different result is required if the agent instead of immediately reporting and transcribing his conversations with defendant, either (1) simultaneously records them with electronic equipment which he is carrying on his person, *Lopez v. United States*, supra [373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462]; (2) or carries radio equipment which simultaneously transmits the conversations either to recording equipment located elsewhere or to other agents monitoring the transmitting frequency." 401 U.S. at 751, 91 S.Ct. at 1126.

We hold that *White* applies to the present case. See also *Thrush v. State*, 515 S.W.2d 122 (Tex.Cr.App.1974). Appellant's contention is overruled.

Rovinsky also asserts two grounds of error in a supplemental brief filed the day of oral argument. In this brief, he challenges (1) the failure of the court to hold a public trial when the hearings on the State's motion in limine were held in chambers, and (2) the absence of an enabling statute authorizing wiretaps in Texas. These grounds present nothing for review because of the untimely filing of the brief. Article 40.09, Section 9, V.A.C.C.P. See *Jones v. State*, 478 S.W.2d 937 (Tex.Cr.App.1972); *Johnson v. State*, 478 S.W.2d 442 (Tex.Cr.App.1972).

Finding no reversible error, the judgment is affirmed.

CLINTON, Judge, dissenting.

In overruling appellant's fifth and final ground of error, the majority opinion undertakes to validate admission of the tape recordings in question on the strength of a purported consent by Ben Lipshy to the interception of his communications with appellant. As this analysis ignores the stark reality that electronic eavesdropping by the State offends the most basic dictates of the Fourth Amendment to the United States Constitution and Article I, Section 9 of the Texas Constitution, I respectfully dissent.

Appellant filed and presented to the trial court a pretrial motion to suppress the intercepted oral conversations with Lipshy, asserting *inter alia* that the interceptions violated Title III of the Omnibus Crime Control and Safe Streets Act of 1968, 18 U.S.C. § 2510–2550, the Fourth Amendment

and the Constitution of the State of Texas.[1] The motion was heard more or less piece-meal. Initially it was stated almost verbatim to the trial court during a motion hearing, but the court deferred ruling until the evidence was actually tendered by the State; when that occasion came appellant called up his motion and a hearing was held outside the presence of the jury.[2] After pursuing a line of questioning, in a colloquy with the trial court counsel emphasized:

"... [W]e believe that *the issue of exception of privacy* is probably the only issue involved on the issue of the admissibility of the tapes. And we want the record to clearly reflect that Mr. Rovinsky had an expectation of privacy based upon his conversation with Mr. Lipshy and Mr. Bloom."[3]

When the exhibits were reoffered by the State,[4] appellant renewed his objection. The motion to suppress bears handwritten notations denying the grounds under discussion.

This treatment of appellant's resistance to the tapes has been developed at some length to make the point that appellant was plainly understood to be objecting to them on constitutional grounds as well as the statutory Title III of the Act. That the electronic eavesdropping was done alone by State officers[5]—no federal agent was involved—utterly without a warrant or judicial authorization of any character is not disputed. The congressional objective in enacting Title III was to meet requirements for a warrant for electronic searches laid out in *Berger v. New York*, 388 U.S. 41, 87 S.Ct. 1873, 18 L.Ed.2d 1041 (1967), but no one suggests that our Legislature has implemented its provisions in the state criminal justice system through enabling legislation pursuant to 18 U.S.C. § 2516(2). So, for state law purposes electronic surveillance is still governed purely by the Fourth Amendment and its state counterpart. See *State v. Brackman*, 582 P.2d 1216 (Mont. 1978).

That the interception of appellant's communications with Lipshy constituted a "seizure" under the ambit of the Fourth Amendment is settled by the seminal decision in this area, *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967), which preceded and is not weakened by the 1968 Crime Control Act. In *Katz*, government agents had intercepted the contents of a telephone conversation by attaching an electronic listening device to the outside of a public phone booth. The Court rejected the argument that a "search" can occur only when there has been a "physical intrusion" into a "constitutionally protected area," noting that the Fourth Amendment "protects people, not places." *Id.* at 351–353, 88 S.Ct. at 511–512. Because the government's monitoring of Katz' conversa-

---

1. It must be clearly understood and appreciated that neither the motion to suppress, objections made during trial nor the ground of error pertains to conversations between appellant and Sam Bloom while Bloom was "wired for sound" through a body microphone worn by him.

2. In addressing the trial court counsel for appellant spoke of his questioning the witness whose testimony tendered the tapes for purposes going to the pretrial motion. The prosecutor professed not to understand "whether he has got an objection or not," and counsel pointed out: "We have previously filed a written objection with the Court, and the Court said we could have a hearing at the appropriate time. I think now is the appropriate time since it's been offered."

3. All emphasis is supplied throughout by the writer of this opinion unless otherwise indicated.

4. During the discussion concerning admissibility of the tapes, the State staked down its position, revealed an accurate understanding of appellant's, *viz*:

"It's the State's position that it is a matter of law that when one party to a conversation consents to its oral acquisition, then that is admissible. Therefore, the State is unable to agree to evidence of expectation of privacy as being not relevant to any issue in this case as a matter of law."

5. The District Attorney made arrangements for the room on at least one occasion and one of his investigators not only handled the mechanics of installing the transmitters but stood by and monitored the conversations as they were held.

tion "violated the privacy upon which he justifiably relied while using the telephone booth," the Court held that it "constituted a 'search and seizure' within the meaning of the Fourth Amendment." *Id.* at 353, 88 S.Ct. at 512.

Consistently with *Katz,* the Supreme Court uniformly has held that the application of the Fourth Amendment depends on whether the person invoking its protection can claim a "justifiable," a "reasonable," or a "legitimate expectation of privacy" that has been invaded by government action. See, e. g., *Rakas v. Illinois,* 439 U.S. 128, 143, 99 S.Ct. 421, 430, 58 L.Ed.2d 387 and n. 12 (1978); *United States v. Chadwick,* 433 U.S. 1, 7, 97 S.Ct. 2476, 2481, 53 L.Ed.2d 538 (1977); *United States v. Miller,* 425 U.S. 435, 442, 96 S.Ct. 1619, 1623, 48 L.Ed.2d 71 (1976); *United States v. Dionisio,* 410 U.S. 1, 14, 93 S.Ct. 764, 771, 35 L.Ed.2d 67 (1973). This inquiry, as Mr. Justice Harlan aptly noted in his *Katz* concurrence, normally embraces two discrete questions. The first is whether the individual, by his conduct, has "exhibited an actual (subjective) expectation of privacy," 389 U.S. at 361, 88 S.Ct. at 516—whether in the words of the *Katz* majority, the individual has shown that "he seeks to preserve [something] as private." *Id.* at 351, 88 S.Ct. at 511. The second question is whether the individual's subjective expectation of privacy is "one that society is prepared to recognize as 'reasonable'," *id.* at 361, 88 S.Ct. at 516—whether, in the words of the *Katz* majority, the individual's expectation, viewed objectively, is "justifiable" under the circumstances. *Id.* at 353, 88 S.Ct. 512. See *Rakas v. Illinois,* 439 U.S. at 143, n. 12, 99 S.Ct. at 430 and *Smith v. Maryland,* 442 U.S. 735 at 739, 99 S.Ct. 2577 at 2579–2580, 61 L.Ed.2d 220 (1979).

In applying the *Katz* analysis, it is important to identify precisely the type of elec-

tronic interception being examined. Here, the State eavesdropped by "bugging"[6] Fairmount Hotel rooms in which appellant and Lipshy met for the ostensible purpose of discussing (1) a libel suit against Zales Corporation, appellant's former employer, by appellant; (2) a shareholder's suit filed against the officers of Zales with appellant as the shareholder's chief witness; and (3) an investigation of Zales by the Internal Revenue Service with appellant again as the principal witness. During the course of the meetings the communications between appellant and Lipshy were being transmitted by the "bug" directly to a human ear and a recording device in an adjacent room. Without more, such warrantless invasion of privacy is manifestly impermissible. *United States v. United States District Court,* 407 U.S. 297, 92 S.Ct. 2125, 32 L.Ed.2d 752 (1972).

As the majority recites, though, "all three conversations were taped by employees of the district attorney's office *with Lipshy's permission."* So, while a warrant was never obtained, the State would have it that Lipshy, a party to the transmitted conversations, gave his effective consent to the "bugging" of the hotel room.[7] But what the State argues, although it does not cite them, is the "misplaced trust" doctrine enunciated and developed in such cases as *Lopez v. United States,* 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963); *Hoffa v. United States,* 385 U.S. 293, 87 S.Ct. 408, 17 L.Ed.2d 374 (1966) and *Lewis v. United States,* 385 U.S. 206, 87 S.Ct. 424, 17 L.Ed.2d 312 (1966). Restated, in *United States v. White,* 401 U.S. 745, 749, 91 S.Ct. 1122, 28 L.Ed.2d 453 (1971), that doctrine means:

"... [H]owever strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it

---

**6.** See *Dalia v. United States,* 441 U.S. 238, 240 n. 1, 99 S.Ct. 1682, 56 L.Ed.2d 168 (1978) wherein the Chief Justice of the United States distinguishes the "tap" from the "bug."

**7.** It is well settled that "consent" is a recognized exception to the Fourth Amendment policy of requiring a search warrant before a

search and seizure is effected. See, e. g., *Schneckloth v. Bustamonte,* 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973); *United States v. Watson,* 423 U.S. 411, 96 S.Ct. 820, 46 L.Ed.2d 598 (1976). However, that concept is not at work here.

turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, 'no interest legitimately protected by the Fourth Amendment is involved,' for that amendment affords no protection to 'a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it.' *Hoffa v. United States*, [385 U.S.] at 304 [87 S.Ct. at 414]. No warrant to 'search and seize' is required in such circumstances, nor is it when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, *Lewis v. United States*, 385 U.S. 206, 87 S.Ct. 206, 17 L.Ed.2d 312 (1966), or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence. *Lopez v. United States*, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462 (1963)."

Where the argument falters, however, is in failing to perceive a difference, for constitutional purposes of protecting privacy, between wiring an informant for sound and wiring a hotel room to eavesdrop. Each case cited by the State and relied upon by the majority in reaching this result involves not the "bugging" of a room but the wiring of an agent or informant. That is the exact point made in *United States v. Padilla*, 520 F.2d 526 (1 Cir. 1976), which the State denominates as "clearly wrong" and which the majority, not unexpectedly, declines to follow.

Simply stated, the First Circuit in *Padilla* held that one does not relinquish an expectation of privacy in a hotel room where, unknown to him, the government has placed a "bug" designed to intercept all communications within that confine. Rejecting the government's position that there is no difference between a temporary interception of communications via bodily carried recording or transmitting devices and the potentially indeterminate "bugging" of a room, the First Circuit noted:

"The government's position would turn on its head the carefully tailored exception to the Katz protection afforded one's expectation of privacy. *See* Note, *Electronic Eavesdropping and the Right to Privacy*, 52 B.U.L.Rev. 831 (1972). Electronic devices could be installed for lengthy periods of time without antecedent authority, so long as only a suspect's conversations with police agents were offered in evidence and the enforcement officials alleged that nothing else was recorded. *Under this approach a room— or an entire hotel—could be bugged permanently with impunity and with the hope that some usable conversations with agents would occur.*

"No case has been presented to us which would allow the government to engage in unlawful electronic surveillance on the ground that had a different means been employed, the recordings would have been admissible. *We reject the invitation so to extend the holding of White.*

*Id.* at 528.[8]

It is uncontradicted that there is a dearth of precedent examining the distinction between wiring an informant for sound and "bugging" a room.[9] The logic of *Padilla* is both sound and applicable to the case at bar. Accordingly, as outlined above, we turn to the two–fold issue of whether appellant, within the confines of the room in the Fairmount Hotel, possessed both a subjective expectation of privacy which was, in

---

8. Though this Court makes much of the fact that it is not "bound" by the decisions of intermediate federal courts, see, e. g., *Flores v. State*, 487 S.W.2d 122 (Tex.Cr.App.1972), neither should gratuitously ignore such reasoned holdings merely because of their source or result.

9. However, Mr. Justice Harlan easily perceived some and anticipated discovery of others in *United States v. White*, supra, 401 U.S. at 788, n. 24, 91 S.Ct. at 1144, n. 24: "However unlikely that the participant recorder will not play his tapes, the fact of the matter is that in a third–party situation the intrusion is instantaneous. Moreover, differences in the prior relationship between the investigator and the suspect may provide a focus for future distinctions."

turn, objectively reasonable. See *Smith v. Maryland*, supra.

That appellant had a subjective expectation of privacy in each hotel room cannot be seriously doubted unless we are to assume that one in the room must claim a right to the sanctity of his words and conversations by personally signing a hotel register. Though it is often said that "the Fourth Amendment protects people, not places," cf. *Katz v. United States*, supra 389 U.S. at 351, 88 S.Ct. at 511, it would blink reality to suggest, as the State does, that appellant never earned or somehow forfeited his constitutional rights in this regard merely because he did not pay for the room or because "no room was or was held out to be for the personal use of appellant or for his domicile or habitation." State's Brief at 14. This we will not do. The record reflects that appellant and Lipshy went to the Fairmount Hotel for the express purpose of discussing some rather sensitive incidents relating to the corporate in–fighting at the Zales Corporation. Under the circumstances, it is not difficult to discern that appellant possessed a reasonable and justifiable expectation that persons on the other side of its door were not then privy to contents of his conversation spoken only in the room. As one court has pointed out in dealing with a similar contention regarding privacy expectations in a hotel room:

> "It is true that the United States Attorney did not ask the union organizer: 'Do you expect that your oral communication would not be subject to interception?' but such exactitude of proof is unnecessary."

*United States v. Burroughs*, 379 F.Supp. 736, at 743–744, (D.C., S.C.1974), *appeal dismissed*, 510 F.2d 967 (4 Cir. 1975).

Neither am I convinced by just the State's assertion that appellant's expectation of privacy was objectively unreason-able or, as the Supreme Court has phrased it, whether this objective expectation "is one that society is prepared to recognize as 'reasonable'." *Smith v. Maryland*, supra 442 U.S. at 740; 99 S.Ct. at 2580. It having been accepted that such an expectation is present in a public telephone booth, *Katz v. United States*, supra, or a commercial establishment, *O'Brien v. United States*, 386 U.S. 345, 87 S.Ct. 1158, 18 L.Ed.2d 94 (1967), we should recognize that a reasonable person engaged in private negotiations has this same expectation in a hotel room.[10] Doing that it is clear that the electronic eavesdropping in the instant case offended the dictates of the Fourth Amendment and our own Bill of Rights.[11]

Because the electronic surveillance here which cannot meet constitutional muster led to this appellant's conviction, I would sustain ground of error number five and reverse the judgment below. That the majority does not impels me respectfully to dissent.

---

**10.** Wherever they occur the values in free conversations discovered by Mr. Justice Harlan "are sacrificed by a rule of law that permits official monitoring of private discourse limited only by the need to locate a willing assistant," *United States v. White*, 401 U.S. at 789, 91 S.Ct. at 1144 (Harlan, J., dissenting).

**11.** The considerations that led the Supreme Court to protect against interception of a telephone conversation in a booth were drawn from "the setting of a home, an office, or a hotel room," the guiding principle being: "Wherever a man may be, he is entitled to know that he will remain free from unreasonable searches and seizures." *Katz*, 389 U.S. at 359, 88 S.Ct. at 515.