Randy JACKSON, Appellant,

v.

The STATE of Texas, Appellee.·

No. 07–81–0127–CR.

Court of Appeals of Texas, Amarillo.

Feb. 24, 1983.

G. Thomas Cannon, Ralph H. Brock, Lubbock, for appellant.

John T. Montford, Dist. Atty., Jim Bob Darnell, Asst. Dist. Atty., Lubbock, for appellee.

Before REYNOLDS, C.J., and DODSON and BOYD, JJ.

REYNOLDS, Chief Justice.

Appellant Randy Jackson was convicted of aggravated robbery by a jury which assessed his punishment at confinement for twenty (20) years. The court rendered judgment and pronounced sentence accordingly.

Appellant seeks a reversal of the judgment of conviction on two grounds: (1) the erroneous admission into evidence of a photograph of a scar on his leg, and (2) the erroneous overruling of his objection to the State's characterization of the case as "garbage." The complained of actions, albeit erroneous, do not, under the facts of this cause, amount to reversible error. Affirmed.

The sufficiency of the evidence to support the conviction is not challenged. It suffices to record that during a series of provocative acts and without the effective consent of the victim, appellant, with the aid of another person, robbed the victim of money while brandishing a six- to eight-inch knife.

Two women whom appellant involved in his actions testified that he had a large burn scar on his left leg; each identified a photograph taken of a scar on appellant's left leg by a police officer as the scar or as similar to the scar they had seen on appellant's leg during the robbery interval. The photograph, identified by the photographer, was admitted into evidence over appellant's "objections which were urged before the Court, previously." The previous objection, stated at a pre-trial suppression hearing, was that appellant "was in custody and under arrest at the time." On appeal, appellant contends that the court reversibly erred in admitting the photograph over his objection because the photograph was the fruit of an illegal warrantless arrest.

■ As a threshhold matter unmentioned by the State, we notice that the objective basis of the ground now advanced on appeal does not comport to the objection voiced to the trial court. There is an at once apparent and vast difference between a trial court objection to the admission of evidence merely because the defendant was in custody and an appellate contention grounded on an inadmissibility of evidence resulting from an illegal arrest. The former is a general objection which offers no reason to exclude the evidence; the latter is a specific objection which evinces a constitutional bar

to the receipt of evidence. It is axiomatic that the appellate ground of error must comport to the objection voiced at trial; otherwise, the appellate ground of error presents nothing for review. *Rovinsky v. State,* 605 S.W.2d 578, 580 (Tex.Cr.App. 1980); *Crocker v. State,* 573 S.W.2d 190, 205 (Tex.Cr.App.1978).

▉ Nonetheless, it reasonably appears from the record that the court understood one of appellant's contentions at the pre-trial suppression hearing was that the photograph was obtained as the result of an illegal arrest; consequently, appellant's initial objection enabled the court to understand the precise question and make an informed ruling. Given this premise, the objection made at trial was sufficient to preserve the error now advanced on appeal, *Roberts v. State,* 545 S.W.2d 157, 158 (Tex. Cr.App.1977), which we will entertain.

The State defends the court's admission of the photograph on three theories: the arrest was legal; however, if the arrest is deemed improper, the photograph was obtained by means sufficiently distinguishable from, and purged of any taint of, the arrest; but, in the event the admission of the photograph was error, the error was harmless. In our view, only the last theory has validity under the facts of this cause.

In theorizing that the arrest was legal, the State argues the applicability of Article 14.04 of the Texas Code of Criminal Procedure Annotated (Vernon 1977), which reads:

> Where it is shown by satisfactory proof to a peace officer, upon the representation of a credible person, that a felony has been committed, and that the offender is about to escape, so that there is no time to procure a warrant, such peace officer may, without warrant, pursue and arrest the accused.

Thus, the question is whether there is satisfactory proof that the arresting officer reasonably believed that appellant was about to escape when he made the warrantless arrest, so that there was no time to procure the arrest warrant. Absent that showing, a warrantless arrest is not authorized by the statute. *Fry v. State,* 639 S.W.2d 463, 469 (Tex.Cr.App.1982).

The robbery underlying appellant's conviction occurred at a motel. Eight days later at approximately 12:30 a.m., an attempted robbery at an apartment complex was reported to the police. Some eight or nine hours later, an officer on patrol, who had been briefed on the report, was notified via radio that the suspect was in a car in the parking lot on the apartment complex. The officer proceeded to the parking lot where he was met by another officer. After searching the lot without finding anyone, the officers were approached by the attempted robbery victim. The intended victim, who had reported to police that appellant was the one who attempted the robbery, told the officers that appellant had gone into the apartment where appellant lived.

The arresting officer made no attempt to procure an arrest warrant even though he knew that the district attorney's office had a policy of having an assistant on call at all times to facilitate the acquirement of an arrest warrant. Moreover, the arresting officer was experienced in keeping a location under surveillance while warrants for arrest were being obtained.

The officers proceeded to the apartment and knocked on the door. Appellant opened the door, identified himself and, according to the arresting officer, invited the officers into the apartment. Appellant was arrested.

The arresting officer testified, and reiterated, that appellant did not attempt to flee or escape in his presence; but, upon his third examination by the State, the officer replied, in answer to a leading question, "Yes, sir, I had reasonable grounds to believe [this man might be trying to flee the scene of a burglary, and a robbery]." The grounds were not articulated.

Appellant was taken to the police department where he was given the Miranda [*Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966)] warning. Appellant, saying that he did not want to talk with the warning officer and wanted to

terminate the interview, called his attorney. About thirty or forty minutes later, the warning officer, together with two other officers, went to the jail and told appellant that they wanted to see the scar on his leg. One of the officers then took the picture of appellant's scarred leg, the admission of which appellant contends was reversible error.

■ The evidence developed in this record, as summarized above, falls far short of satisfactory proof that appellant was about to escape. Finding appellant, whose identity was known, in his home in the vicinity of, and some eight to nine hours after, the attempted robbery, without any objective manifestations of preparations or an attempt to escape, militates against a satisfactory showing that appellant was about to escape. The officer's unarticulated subjective grounds to believe that appellant *might be trying to flee the scene* are not only insufficient to justify the arrest, *Talbert v. State,* 489 S.W.2d 309, 311 (Tex.Cr. App.1973), but, on balance, are belied by the objective facts shown of record. Since a showing that the offender is about to escape is indispensable to the justification for a warrantless arrest under Article 14.04, *Hardison v. State,* 597 S.W.2d 355, 357 (Tex. Cr.App.1980), and there is none here, appellant's warrantless arrest was not authorized.

■ The arrest being illegal, the photograph should not have been admitted, *Fry v. State, supra,* at 470; *Dujay v. State,* 368 S.W.2d 613, 614 (Tex.Cr.App.1963), unless the photograph was obtained, as the State submits, by means sufficiently distinguishable from the arrest to purge it of the primary taint of illegality. *Brown v. Illinois,* 422 U.S. 590, 598–99, 95 S.Ct. 2254, 2259, 45 L.Ed.2d 416 (1975). The State, recognizing its burden to show that the photograph was admissible, undertakes to demonstrate that the photograph was purged of the taint of illegality by the facts that appellant was advised of his constitutional rights and then, upon the officer's request, showed them his scarred leg. We are not persuaded.

■ The *Miranda* warning given only by the police officer cannot, by itself, serve to attentuate the taint of an illegal arrest. *Id.* Other than the warning, there is no evidence in this record of any circumstance intervening between appellant's arrest, detention and his invocation of his constitutional rights and the taking of the photograph less than an hour later. Still, the State argues that appellant consented to the photograph; yet, all this record reflects is that appellant silently complied with the request from a police official, and the State cannot establish consent by showing no more than mere acquiescence to a claim of lawful authority. *Escamilla v. State,* 556 S.W.2d 796, 799 (Tex.Cr.App.1977). We, therefore, conclude that the photograph was not admissible. *Fry v. State, supra.*

■ Notwithstanding, we, disagreeing with appellant's assertion that the State relied heavily upon the photographic evidence to support its burden of proof on the issue of identity, further conclude that the admission of the photograph was not reversible error. We reach this conclusion because our own reading of the record convinces us that the impact of the tainted photograph upon the minds of average jurors would be harmless beyond a reasonable doubt.

We recognize, as appellant points out, that a fingerprint taken from a car adjacent to the robbery scene, and perhaps touched by the robbers, did not match appellant's print; that a tennis shoe found at the scene was larger than the size worn by appellant; and that only one of two composite sketches made from a description given by the two women resembled appellant in some parts. We also recognize that two persons, one of whom was identified as appellant, committed the robbery.

And in spite of the evidence which did not link appellant to the robbery, the victim of the robbery, Riggins, unequivocally identified appellant as the robber, testifying that he had a face-to-face confrontation with appellant in a well lit area for approximately forty-five minutes on the night of

the robbery. Riggins also identified appellant in a fair line-up at the police station. He did not see the scar on appellant's leg and it did not form any basis for his identification.

One of the women whom appellant involved and attempted to rape, Mrs. Patel, identified appellant as the robber, testifying that she observed him for about twenty minutes in pretty good light on the night of the robbery, a part of the time from a distance of six inches. She reported that his face was marked in her mind and, although she saw the scar on appellant's leg, she would only say that the photograph looked similar to the scars she had seen on appellant's leg that night. Although she had furnished the police a description from which the composites were drawn immediately after the robbery, she stated that she had not seen the composites until they were shown to her at the trial.

Under this unchallenged record of appellant's overwhelming guilt, we conclude that the minds of an average jury would not have found the State's proof of appellant's identity significantly less persuasive had the photograph been excluded. Therefore, the admission of the tainted photograph was harmless beyond a reasonable doubt. *Harrington v. California,* 395 U.S. 250, 254, 89 S.Ct. 1726, 1728, 23 L.Ed.2d 284 (1969); *Chapman v. California,* 386 U.S. 18, 24, 87 S.Ct. 824, 828, 17 L.Ed.2d 705 (1967); *Bridger v. State,* 503 S.W.2d 801, 804–05 (Tex.Cr. App.1974). The first ground of error is overruled.

■ In his voir dire of the jury panel, the State's prosecutor remarked:

There are going to be a lot of things about this case that are going to be offensive and repugnant to all of you as law abiding citizens, based on the evidence. It is not going to be a particularly pleasant experience in the sense of there being something worthwhile as far as having to listen to the garbage that you are going to have to listen to under this evidence.

Appellant's objection to the reference to the case as garbage was overruled. Thereafter, in his closing argument on the guilt-innocence stage of the proceedings, the State's prosecutor said,

And I submit to you right now that if you have any reason to doubt under this evidence that this is the man that pulled that robbery and did all those things that you have heard paraded before you; and now you know why I referred to this case as mostly garbage in Voir Dire, because of what that man did under the evidence.

Appellant's objection to attacking the defendant over shoulders of counsel and attacking the case as garbage was overruled. Later, the prosecutor concluded with these unobjected to words:

And that is, I submit, why you can believe all of their identification as positively identifying Randy Jackson, as the man that did what I characterize and will characterize and will continue to characterize as garbage in your county, because that is exactly what it was.

We are not trying to inflame you. That is not our job. I am asking you to base your decision on the evidence, the irrefutable evidence, the physical evidence, that all points to one man, S–2 under the evidence, Randy Jackson.

On appeal, appellant urges that the overruling of his objection to the characterization of the case as garbage was error, calculated to prejudice and inflame the minds of the jurors. We agree that permitting the characterization of the case as garbage was error, but, in the light of the whole cause, we do not deem the error to rise to the heights of reversible error.

Agreeing with the State's concession that the word choice was poor, we disagree with the State's viewpoint that the reference to garbage constituted a proper plea for law enforcement. Rather, in our view, the remarks were in the nature of vituperation, which is not to be tolerated. *Hess v. State,* 168 Tex.Cr.R. 425, 328 S.W.2d 308, 309 (Tex. Cr.App.1959). Yet, uncondoned as the remarks are, not every improper remark triggers a reversal of a judgment of conviction. *Id.* at 309–10.

To resolve the question whether the improper statements of the State's prosecutor constituted reversible error, we must consider the probable effect thereof on the minds of the jury, and to do so, we must look to the facts and surroundings of the particular cause. *Id.* at 309. When it is considered that the proof clearly shows the appellant's guilt as charged in the indictment, it must be concluded that the remarks were not calculated to adversely affect the rights of appellant so as to present reversible error. *Id.* at 310. The reference to garbage in this cause is similar to the uncorrected reference to the appellant as "trash" in *Black v. State,* 491 S.W.2d 428, 431 (Tex.Cr.App.1973), which was held not to be reversible error. *Id.* at 432. The second ground of error is overruled.

The judgment is affirmed.