Anthony George **GREEN**, Appellant,

v.

The **STATE** of Texas, Appellee.

No. 663–83.

Court of Criminal Appeals of Texas, En Banc.

June 13, 1984.

---

Ted Redington, Dallas, for appellant.

Henry Wade, Dist. Atty., W.T. Westmoreland, Jr., Royce West, Donald M. Land and James Nelson, Asst. Dist. Attys., Dallas, Robert Huttash, State's Atty. and Cathleen Riedel, Asst. State's Atty., Austin, for the State.

## OPINION ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW

ONION, Presiding Judge.

This is an appeal from a conviction for the offense of murder. Punishment, assessed by the jury, was fixed at 15 years' imprisonment.

On appeal the Dallas Court of Appeals affirmed the conviction holding, inter alia, that the trial court did not err in refusing to permit the appellant to cross-examine and possibly impeach a State's rebuttal witness, Esther Randall, as to a pending misdemeanor check charge against her. *Greene v. State*,[1] 651 S.W.2d 948 (Tex. App.—Dallas—1983).

We granted appellant's petition for discretionary review to determine the correctness of that part of the decision.

A brief recitation of the facts will place the contention in proper perspective.

The record reveals that the appellant and the deceased, Mary Ann Williams, had been romantically involved intermittently over a period of several years. Their relationship was a stormy one and in August, 1980, the deceased took action which placed the appellant under a peace bond.

William Taylor testified that on the afternoon of June 7, 1981, he went to the deceased's house to take her out to dine. Taylor had dated the deceased before his marriage, and was now estranged from his wife. He was again dating the deceased and staying at her house on occasion. He related that shortly after his arrival on June 7, 1981, appellant came to the screen

---

1. The appellant's name is Green according to the indictment and the record. The error in spelling is apparently that of the Court of Appeals.

door of the deceased's house and asked to speak to her. Taylor called to the deceased, who came out of a back room. Appellant opened the screen door and rushed at the deceased as if to hit her and she raised her arm to block his blow. Appellant, according to Taylor, pulled a pistol from his pocket, but it fell to the floor. Taylor rushed the appellant, who knocked him back with his left elbow, and recovered the pistol. A shot was then fired by the appellant. Taylor did not see whether the deceased was hit, as he ran from the house. Taylor heard two more shots, and as he ran along the street, appellant pursued and shot at him twice.

The record shows the deceased suffered three bullet wounds. One grazed her arm, one struck her in the left side of the chest and one in the back. The latter two wounds caused her death according to the medical examiner.

The State offered testimony of two women who had seen Taylor being shot at as he ran down the street as well as the testimony of several investigating officers. A revolver was found at appellant's grandmother's house, but ballistics tests were not conclusive that it was the weapon which inflicted the fatal wounds. Testimony was also offered that appellant had repeatedly called the deceased at work on two days before the shooting, though told she did not want to receive any calls there.

Testifying in his own behalf appellant, who was separated from his wife and living with his ex-wife at the time of the incident, stated that he had repeatedly asked the deceased to marry him or to "shack" with him. He related he met the deceased in December, 1978 and that they started to date in September, 1979, and this continued into 1980. He agreed they had their troubles and arguments; that theirs was a "make-up-break-up" relationship; that he had slapped her in a grocery store, had threatened to kill her, and that he had harassed her by calling her 15 or 20 times daily at her place of employment. In August, 1980, she had him placed under a peace bond. In October, 1980, he saw her

downtown. They started dating again, and she helped him find an apartment, and stayed with him on occasion. He described their relationship between October and March, 1981, as much better than before the peace bond. They had an argument in April, but began jogging together in May. About the middle of May, they argued again and she told him if he came around again she would have William Taylor blow his brains out. Appellant stated the relationship was "good" again in the latter part of May and early June.

On June 7, 1981, he went by the deceased's house to visit her prior to going to his employment as a bus driver. He saw Taylor entering the house. Recalling what the deceased told him, he took his revolver out of the glove compartment of his car and put it in his pants pocket. He asked to speak to the deceased and Taylor called her. When she came into the living room from a back room, appellant entered the house and asked how she was. She proceeded past him as if she was leaving with Taylor. Appellant grabbed her arm, and noticed she seemed to nod to Taylor, whom the appellant observed reaching in his pocket. Appellant pulled out his revolver, but dropped it, and a struggle with Taylor ensued over the control of the weapon. Appellant claimed that while they were wrestling, the gun discharged several times. Taylor broke and ran from the house. Although he observed the deceased had been hit, appellant left the house. He admitted he fired the revolver twice outside, but stated he was not shooting at Taylor, that he fired into the air. He went to his grandmother's home where he hid the weapon and then to his estranged wife's house in Oak Cliff. He heard about the killing on television, went to the family lawyer, who surrendered him to the police.

On cross-examination appellant specifically denied that on occasions in February, 1981, when the deceased was with Esther Randall that he cut her purse straps on one occasion and sliced through her coat on another.

In rebuttal the State called Esther Randall. She testified that in February, 1981, she went to a Seven-Eleven store with the deceased; that the appellant approached, got into an argument with the deceased, and cut the straps off of the deceased's purse. On another occasion in February she was with the deceased at the Town East Mall when the appellant approached, and when the deceased told him she didn't want to be bothered, the appellant cut her coat.

After both sides closed at the guilt stage of the trial, appellant asked to perfect a bill of exception, stating the prosecution had informed him Randall had a pending case, and the court had not permitted him to go into the matter.

Randall then testified for the purpose of the bill she had a pending case for passing a worthless check; that the 15 or 20 dollar check had been given to a doctor; that when she received a "thing" in the mail, she had gone down and paid the check, but was told she had to go to court; that she was supposed to have been in Judge Miller's court the day before, and she assumed the case was still pending. The prosecutor elicited from Randall that he had not offered her anything for her testimony, and had not offered to dismiss her case in exchange for her testimony. The court refused to allow appellant to elicit the above testimony in the jury's presence to establish bias and motive for testifying as a witness for the prosecution.

Article 38.29, V.A.C.C.P., provides:

"The fact that a defendant in a criminal case, or a witness in a criminal case, is or has been, charged by indictment, information or complaint, with the commission of an offense against the criminal laws of this State, of the United States, or any other State shall not be admissible in evidence on the trial of any criminal case for the purpose of impeaching any person as a witness unless on trial under such indictment, information or complaint a final conviction has resulted, or a suspended sentence has been given and has not been set aside, or such person has been placed on probation and the period of probation has not expired. In trials of defendants under Article 36.-09, it may be shown that the witness is presently charged with the same offense as the defendant at whose trial he appears as a witness."

The court has recently discussed said Article 38.29:

"Our Legislature has declared Texas policy to be that proof of formal accusations brought against a witness will not constitute evidence that he, in general, is unworthy of belief in the following circumstance: the accusation has not been fully adjudicated or, if adjudicated, has resulted in either a suspended sentence which has been set aside or a probation which his expired." *Davis v. State,* 645 S.W.2d 288 (Tex.Cr.App. 1983).

 There is, however, a well established rule (an exception to ARticle 38.29, V.A.C.C.P.) that great latitude should be allowed the accused in showing any fact, including pending charges, which would tend to establish ill feeling, bias, motive, and animus on the part of any witness testifying against him. *Spriggs v. State,* 652 S.W.2d 405, 407 (Tex.Cr.App. 1983); *Hodge v. State,* 631 S.W.2d 754 (Tex.Cr. App. 1982); *Randle v. State,* 565 S.W.2d 927 (Tex.Cr.App. 1978); *Simmons v. State,* 548 S.W.2d 386 (Tex.Cr.App. 1977); *Evans v. State,* 519 S.W.2d 868 (Tex.Cr.App. 1975).[2] Trial courts, however, have con-

---

**2.** In *Massengale v. State,* 653 S.W.2d 20, 22 (Tex. Cr.App. 1983), this court wrote:

"The Court of Appeals ... recognized that although under Article 38.29, supra, 'unadjudicated criminal offenses are inadmissible for impeachment purposes,' evidence of pending charges is nevertheless admissible 'under certain circumstances for the limited purpose of showing bias, prejudice, interest, and motive of the witness in testifying as he did.' That certainly is an accurate statement of the rule in this case. *Carrillo v. State,* 591 S.W.2d 876, 886 (Tex.Cr.App. 1979); *Moreno v. State,* 587 S.W.2d 405, 409–410 (Tex.Cr.App. 1979); *Murphy v. State,* 587 S.W.2d 718, 722–723 (Tex.Cr. App. 1979); *Hemphill v. State,* 634 S.W.2d 78 (Tex.App.—Austin—discretionary review refused)."

siderable discretion as to how and when bias may be proved and as to what collateral evidence is material for that purpose. *Hodge v. State,* supra; *Spriggs v. State,* supra.

In *Cloud v. State,* 567 S.W.2d 801 (Tex. Cr.App. 1978), this court wrote:

"However, trial courts have considerable discretion as to how and when bias may be proved and as to what collateral evidence is material for that purpose. (Citations omitted).

" 'The extent to which a witness may be cross-examined for the purpose of showing bias on a collateral matter rests on the sound discretion of the trial judge. The trial judge must balance the probative value of evidence sought to be introduced against the risk its admission it may entail. The potential risks include the possibility of undue prejudice, embarrassment or harassment to either a witness or a party, the possibility of misleading or confusing a jury, and the possibility of undue delay or waste of time." (Citations omitted).

To the same effect see *Chvojka v. State,* 582 S.W.2d 828 (Tex.Cr.App. 1979), and *Rovinsky v. State,* 605 S.W.2d 578 (Tex.Cr. App. 1980).

■■ In the instant case Randall was not a material witness or an accomplice witness. She was not a witness to the events of June 7, 1981, nor shown to have any personal knowledge of the alleged offense. She was merely a rebuttal witness to appellant's testimony that he had not engaged in certain acts against the deceased in February, 1981, when Randall was present. Appellant was allowed to fully explore in his bill of exception that there was a pending misdemeanor charge. The charge was for passing a worthless check. The check had been paid. The charge was still pending, but there was nothing to show the prosecutor was using the charge to pressure the witness to testify favorably to the State as a rebuttal witness. As Randall told the jury, she had been a friend of the deceased for some 12 years. The worthless check charge had no connection with the murder

offense alleged, and the rejected evidence was in no way shown to be relevant on the issue of motive, self-interest, etc. Cf. *Smith v. State,* 516 S.W.2d 415 (Tex.Cr. App. 1974).

We cannot conclude under the circumstances of the case the trial court erred in excluding the rejected testimony.

The judgment of the Court of Appeals is affirmed.

CLINTON, J., dissents.

TEAGUE, Judge, dissenting.

I respectfully dissent for the following reasons, which were stated by Justice Whitham, joined by Justices Guillot, Rowe and Vance, in the dissenting opinion he filed in this cause when it was decided by the Court of Appeals. See *Greene v. State,* 651 S.W.2d 948 (Tex.App.—Dallas 1983):

In the present case the district attorney of Dallas County had the responsibility for the prosecution of both appellant and the witness Randall. Appellant sought to cross-examine witness Randall about the criminal charge pending against her for the purpose of showing bias and motive on her part to testify for the prosecution in appellant's case. It was important for appellant to show the jury that Randall's damaging testimony could be tainted by the possibility that in exchange for her favorable testimony for the State she might expect, or have some hope of, leniency from the prosecution in the charge pending against her. I would hold that in the present case the trial court erred in refusing to allow appellant to cross-examine a State's witness about the criminal charge pending against her. Moreover, I cannot agree that the error in refusing to allow appellant to cross-examine witness Randall on this point was harmless to appellant. Great significance was attached to her testimony by the prosecutor. She was the prosecution's only rebuttal witness and her testimony served to contradict appellant's emphatic denials of any violent behavior

towards the deceased after a peace bond was issued. Further, the prosecutor's comments in closing argument about Randall's testimony emphasized its damaging nature.

The majority fails to tell us that witness Randall was called as the sole rebuttal witness. The State saved witness Randall for rebuttal for the purpose of identifying appellant as a liar. I simply cannot agree that an accused has not been harmed when denied the right to show bias and motive on the part of a sole rebuttal witness used for this purpose by the State. I would hold that appellant had the right to pursue the line of cross-examination in question and that it was reversible error for the trial court to preclude appellant from this line of cross-examination.

MILLER, J., joins.