# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-14-00712-CR

**Anthony Torres, Appellant**

**v.**

**The State of Texas, Appellee**

### FROM THE DISTRICT COURT OF COMAL COUNTY, 207TH JUDICIAL DISTRICT
### NO. CR2013-363, HONORABLE DIB WALDRIP, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

A jury convicted appellant Anthony Torres of the offenses of sexual assault in a prohibited relationship and prohibited sexual conduct with a descendant, assessing punishment at twenty years' imprisonment for the sexual-assault offense and five years' imprisonment for the prohibited-sexual-conduct offense.[1] The district court rendered judgment on each verdict. In nine points of error on appeal, Torres asserts that (1) the evidence is insufficient to prove that he committed the charged offenses; (2) the court's charge to jury during the punishment phase of trial erroneously authorized a first-degree-felony range of punishment for the sexual-assault offense; (3) the district court abused its discretion in overruling Torres's motion for mistrial following a witness's reference to an extraneous offense; (4) the district court abused its discretion in denying Torres's motion to suppress evidence; and (5) Torres received ineffective assistance of counsel

---

[1] *See* Tex. Penal Code §§ 22.011(f), 25.02(a)(1), (c).

during trial. Guided by a recent controlling decision of the Texas Court of Criminal Appeals, we will modify Torres's judgment of conviction for the first-degree felony offense of sexual assault in a prohibited relationship to reflect that he was convicted of the second-degree felony offense of sexual assault, affirm the judgment as modified as to the finding of guilt, reverse the part of the judgment imposing sentence, and remand to the district court for a new punishment hearing for that offense.[2]  We will affirm Torres's judgment of conviction for the offense of prohibited sexual conduct.

## BACKGROUND

The jury heard evidence that on the night of October 19, 2012, Torres engaged in sexual intercourse with D.T., his adult daughter. D.T. testified that on the night in question, she and Torres had been out celebrating her 21st birthday with several of Torres's friends, drinking heavily. According to D.T., they were at a bar until approximately 1 or 2:00 a.m., at which time they and some of Torres's friends drove to Torres's house to spend the night. Once there, D.T. recounted, Torres offered her a drink, but D.T. declined and went to Torres's bedroom, where she fell asleep while Torres and his friends continued drinking in the other room. D.T. testified that when she later awoke, Torres was on top of her and having sex with her. Although D.T. acknowledged that she could not see Torres clearly in the dim lighting of the room, she "could tell that it was him" because "it smelled like him." According to D.T., she asked Torres what he was doing, but "[h]e didn't say anything. He just got up and went to the bathroom" and proceeded to take a shower. D.T. testified

---

[2] *See Arteaga v. State*, No. PD-1648-15, 2017 Tex. Crim. App. LEXIS 533, at *22-25 (Tex. Crim. App. June 7, 2017).

that as Torres was showering, she got out of bed and sat down in a corner of the bedroom, crying. D.T. explained that after Torres finished showering, he came out of the bathroom and asked her if she was okay. D.T. did not respond but continued crying until she fell back to sleep. When she awoke later that morning, D.T. recounted, she saw Torres sitting on his couch "with his head in his hands." D.T. further testified that, later that day, Torres drove her to her aunt's house, where D.T. lived at the time. According to D.T., she told no one of the assault until months later, when she described the events of that night to her aunt and, shortly thereafter, reported the incident to law enforcement. Also testifying were D.T.'s aunt, Alma "Toni" Torres, and Detective David Schroeder of the New Braunfels Police Department, who had interviewed both D.T. and Torres during the investigation. Based on this and other evidence, which we discuss in more detail below, the jury convicted Torres of the offenses of sexual assault in a prohibited relationship and prohibited sexual conduct, assessing punishment as noted above. The district court rendered judgment on each verdict and sentenced Torres accordingly. This appeal followed.

## ANALYSIS

**Evidentiary sufficiency**

We first address Torres's second and third points of error, in which Torres asserts that the evidence is insufficient to prove that he sexually assaulted D.T. or engaged in prohibited sexual conduct with her. Specifically, Torres claims that the evidence is insufficient to prove that he penetrated D.T.'s sexual organ with his sexual organ or that, if he did, it was without D.T.'s consent so as to rise to the level of an assault.

3

When reviewing the sufficiency of the evidence supporting a conviction, "the standard of review we apply is 'whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'"[3] "This standard tasks the factfinder with resolving conflicts in the testimony, weighing the evidence, and drawing reasonable inferences from basic facts."[4] "[A]n inference is a conclusion reached by considering other facts and deducing a logical consequence from them."[5] "On appeal, reviewing courts 'determine whether the necessary inferences are reasonable based upon the combined and cumulative force of all the evidence when viewed in the light most favorable to the verdict.'"[6] "Thus, '[a]ppellate courts are not permitted to use a 'divide and conquer' strategy for evaluating sufficiency of the evidence' because that approach does not consider the cumulative force of all the evidence."[7] "When the record supports conflicting inferences, we presume that the factfinder resolved the conflicts in favor of the verdict, and we defer to that determination."[8] Moreover, "[o]ur review of 'all of the evidence' includes evidence that was properly and improperly

---

[3] *Murray v. State*, 457 S.W.3d 446, 448 (Tex. Crim. App. 2015) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).

[4] *Id*.

[5] *Hooper v. State*, 214 S.W.3d 9, 16 (Tex. Crim. App. 2007).

[6] *Murray*, 457 S.W.3d at 448 (quoting *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007)).

[7] *Id*. (quoting *Hacker v. State*, 389 S.W.3d 860, 873 (Tex. Crim. App. 2013)).

[8] *Id*. at 448-49 (citing *Hooper*, 214 S.W.3d at 12).

4

admitted."[9] Finally, "the same standard of review is used for both circumstantial and direct evidence cases."[10] "Circumstantial evidence is as probative as direct evidence in establishing guilt, and circumstantial evidence alone can be sufficient" to support a conviction.[11]

A person commits the offense of sexual assault if he "causes the penetration of the anus or sexual organ of another person by any means, without that person's consent."[12] A sexual assault is without the consent of the other person if "the other person has not consented and the actor knows the other person is unconscious or physically unable to resist" or if "the other person has not consented and the actor knows the other person is unaware that the sexual assault is occurring."[13]

A person commits the offense of prohibited sexual conduct "if the person engages in sexual intercourse . . . with another person the actor knows to be, without regard to legitimacy, the actor's . . . descendant by blood or adoption."[14] "Sexual intercourse" means "any penetration of the female sex organ by the male sex organ."[15]

In this case, D.T. testified that when she awoke on the night in question, Torres was "on top" of her, and she could feel him "thrusting" inside of her "pelvic area." When asked if

---

[9] *Jenkins v. State*, 493 S.W.3d 583, 599 (Tex. Crim. App. 2016) (citing *Clayton*, 235 S.W.3d at 778).

[10] *Id*. (citing *Hooper*, 214 S.W.3d at 13).

[11] *Id*. (citing *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004)).

[12] Tex. Penal Code § 22.011(a)(1).

[13] *Id*. § 22.011(b)(3), (5).

[14] *Id*. § 25.02(a)(1).

[15] *Id*. § 25.02(b)(2).

5

Torres's penis was inside of her vagina, D.T. answered, "Yes." D.T. also testified that when she went to bed that night, her pants were on, but that when she awoke, her pants and panties were "around [her] knees."[16] In addition to D.T.'s testimony, there was other evidence that supported the jury's finding that Torres had penetrated D.T.'s sexual organ with his sexual organ. D.T.'s aunt, Toni Torres, testified that she had multiple conversations with Torres regarding the incident. Toni recounted that during one such conversation over the phone, after D.T. had filed a police report, she had asked Torres, "What the hell did you do?" According to Toni, Torres told her that he had "fucked up." Toni recounted that when she asked Torres for more information, Torres claimed that it was D.T. who had initiated sexual activity with him, that "it all happened so fast," and that, the "next thing that he knew, he was inside her." Toni further testified that, during a subsequent conversation with Torres at his house, Torres again claimed that D.T. had initiated sex with him and again admitted to having sex with D.T. Specifically, Toni recounted, Torres told her that, while they were in bed together, "he flipped her over on her back and he fucked her." When viewed in the light most favorable to the verdict, D.T.'s testimony and Torres's statements provide sufficient evidence that Torres had engaged in sexual intercourse with his daughter.

As for Torres's contention that there is insufficient evidence to prove that the intercourse was without D.T.'s consent, D.T. testified that when she woke up, Torres was already on top of her, "thrusting" inside of her, and she also testified that she had been drinking heavily that

---

[16] Torres asserts that D.T.'s testimony was not credible because D.T. acknowledged that she had been drinking heavily on the night in question and could not recall everything that had occurred prior to the incident. However, it was for the jury to determine whether D.T. was credible, and we are to defer to the jury's resolution of any credibility issues in favor of the verdict.

night, that she was tired when she returned to Torres's house and declined his offer of another drink, and that she had fallen asleep in Torres's bed shortly thereafter. D.T. further testified that Torres did not say anything when she asked him to explain what he was doing but instead "just got up and went to the bathroom" to shower. And, D.T. testified, she began crying immediately after the incident and continued crying when Torres exited the bathroom and asked her if she was okay. This and other evidence and all reasonable inferences therefrom, when viewed in the light most favorable to the verdict, supports the jury's finding that D.T. did not consent to the intercourse and that Torres knew that D.T. was either unaware that the intercourse was occurring or that she was unconscious or physically unable to resist at the time Torres engaged in sexual intercourse with her.[17] We conclude that the evidence is sufficient to prove that Torres committed the offenses of sexual assault and prohibited sexual conduct.

We overrule Torres's second and third points of error.

**Sexual assault of a person whom Torres was "prohibited from marrying"**

Sexual assault is ordinarily a second-degree felony offense.[18] However, it is a first-degree felony offense "if the victim was a person whom the actor was prohibited from marrying or

---

[17] *See, e.g., Garcia v. State*, 563 S.W.2d 925, 928 (Tex. Crim. App. 1978); *In re E.I.G.*, 346 S.W.3d 644, 647 (Tex. App.—El Paso 2009, no pet.); *Briseno v. State*, 293 S.W.3d 644, 646-47 (Tex. App.—San Antonio 2009, no pet.); *Hughes v. State*, 194 S.W.3d 649, 654 (Tex. App.—Tyler 2006, no pet.); *Hernandez v. State*, 804 S.W.2d 168, 170 (Tex. App.—Houston [14th Dist.] 1991, pet. ref'd); *see also Ray v. State*, No. 03-13-00085-CR, 2014 Tex. App. LEXIS 9395, at *8-13 (Tex. App.—Austin Aug. 26, 2014, no pet.) (mem. op., not designated for publication) (holding evidence sufficient to support sexual assault conviction where there was evidence presented that victim was "very intoxicated," "passed out," and awoke "naked from the waist down").

[18] *See* Tex. Penal Code § 22.011(f).

purporting to marry or with whom the actor was prohibited from living under the appearance of being married under Section 25.01."[19] Section 25.01 of the Penal Code is the bigamy statute.[20] In Torres's first point of error, he argues that the evidence is insufficient to prove that D.T. was a person whom Torres was prohibited from marrying under the bigamy statute. In response, the State asserts that bigamy is not an element of the charged offense and, therefore, it was not required to provide any evidence of conduct that would constitute bigamy.

As discussed above, "[t]he usual standard for reviewing the sufficiency of the evidence to support a conviction is whether, after viewing the evidence in the light most favorable to the prosecution, any rational finder of fact could have found the essential elements of the offense beyond a reasonable doubt."[21] "In some cases, however, a sufficiency-of-the-evidence issue turns on the meaning of the statute under which the defendant has been prosecuted."[22] "This is because an appellate court must determine what the evidence must show before that court can assess whether the evidence is sufficient to show it."[23] In these cases, the question is whether the alleged conduct "actually constitute[s] an offense under the statute with which the defendant has been charged."[24]

---

[19] *Id*.

[20] *See id*. § 25.01.

[21] *Liverman v. State*, 470 S.W.3d 831, 835-36 (Tex. Crim. App. 2015) (citing *Jackson*, 443 U.S. at 319).

[22] *Id*. (citing *Moore v. State*, 371 S.W.3d 221, 227 (Tex. Crim. App. 2012)).

[23] *Moore*, 371 S.W.3d at 227.

[24] *Liverman*, 470 S.W.3d at 836.

8

While this case was pending on appeal, the Texas Court of Criminal Appeals had occasion to address the meaning of Section 22.011(f) of the Penal Code, the statute that is at issue here, in *Arteaga v. State*.[25]  In *Arteaga*, the defendant was charged with committing multiple counts of the offense of sexual assault of a child whom he was "prohibited from marrying," specifically his biological daughter.[26]  In the abstract portion of the jury charge, the trial court included the language of Section 6.201 of the Family Code, the consanguinity statute, which specifies that a marriage is "void" if, among other circumstances, one party to the marriage is related to the other as a "descendant, by blood or adoption."[27]  The abstract portion of the charge included no reference to the bigamy statute, nor did the application paragraph, which instructed the jury that it could convict Arteaga "only under the circumstances alleged in the indictment (i.e., that Arteaga was 'prohibited from marrying' his daughter)."[28]  The question of whether Arteaga was prohibited from marrying his daughter was submitted to the jury as a special issue, which the jury answered in the affirmative for each count of the indictment.[29]  Based on that finding, the jury convicted Arteaga of multiple first-degree-felony offenses, and the district court sentenced Arteaga accordingly.[30]

---

[25] No. PD-1648-15, 2017 Tex. Crim. App. LEXIS 533 (Tex. Crim. App. June 7, 2017).

[26] *Id*. at *1.

[27] *Id*. at *3 & n.4 (citing Tex. Fam. Code § 6.201).

[28] *Id*. at *3-4.

[29] *Id*.

[30] *Id*. at *4.

On appeal, Arteaga argued that the charge was erroneous because it enabled the State to prove that he was "prohibited from marrying his daughter" under the circumstances specified in the consanguinity statute, not under the circumstances specified in the bigamy statute.[31] He also argued that he was egregiously harmed by the error because the charge did not require the State to prove that he was "prohibited from marrying his daughter" under the bigamy statute.[32] The intermediate appellate court rejected both contentions, concluding that it would be "absurd" to require the State to prove facts that would constitute bigamy in every case charged under section 22.011(f).[33]

However, on discretionary review, the Court of Criminal Appeals agreed with Arteaga. The court began its analysis by construing Section 22.011(f) of the Penal Code. Specifically, the court asked, "[W]hat does the State have to prove when it invokes Section 22.011(f) of the sexual-assault statute, which incorporates the bigamy statute, to elevate sexual assault from a second-degree felony to a first-degree felony?"[34] After first determining that the language of section 22.011(f) was "grammatically ambiguous" and thus susceptible to two different, but reasonable interpretations (one in which the State was required to prove facts that would constitute bigamy under all circumstances and one in which the State was required to prove facts that would constitute bigamy only under certain circumstances), the court proceeded to resolve the ambiguity

[31] *Id*.

[32] *Id*.

[33] *Id*. at *4-5 (citing *Arteaga v. State*, 511 S.W.3d 675, 684-91 (Tex. App.—Corpus Christi 2015)). The State relies on the analysis of the intermediate court of appeals in its brief.

[34] *Id*. at *9.

10

by examining the bigamy statute to which section 22.011(f) referred.[35] The court observed that the bigamy statute prohibits a person from the following acts: (1) marrying someone other than his spouse; (2) marrying someone who he knows is already married; (3) claiming to marry a person other than his spouse; (4) claiming to marry a person who he knows is already married; (5) living under the appearance of being married with a person other than his spouse; and (6) living with a person under the appearance of being married who he knows is already married.[36] The court concluded that the legislature drafted section 22.011(f) with the intent to "incorporate all six bigamy prohibitions . . . without awkwardly including the entire [bigamy] statute."[37] Thus, according to the court, "[w]hen the two statutes are considered in light of each other, the grammatical ambiguity in Section 22.011(f) is clarified: The legislature intended for the State to prove facts constituting bigamy whenever it alleges that the defendant committed sexual assault, *and* the State invokes Section 22.011(f)."[38] The court noted that, when discussing "facts that *would* constitute bigamy," it did not "mean that the State has to prove that the defendant committed the offenses of sexual assault and bigamy."[39] Instead, "[w]hat we mean is that, to elevate second-degree felony sexual assault to first-degree felony sexual assault under Section 22.011(f), the State must prove that the defendant

---

[35] *Id*. at *9-11.

[36] *Id*. at *12-13.

[37] *Id*. at *13.

[38] *Id*. (emphasis in original).

[39] *Id*. at *10 n.9 (emphasis in original).

committed sexual assault and that, if he were to marry or claim to marry his victim, or to live with the victim under the appearance of being married, then he *would* be guilty of bigamy."[40]

Having determined that the State was required to prove facts that would constitute bigamy in order to elevate sexual assault from a second-degree felony to a first-degree felony, the court proceeded to consider whether the jury charge was erroneous for failing to include the bigamy statute. Observing that "the special issue submitted as part of the sexual-assault charge asked the jury whether it found beyond a reasonable doubt that Arteaga 'was prohibited from marrying [the victim],'" the court explained that the special issue could not be understood by the jury without reference to the bigamy statute, which "defines when a person is prohibited from marrying another for purposes of 22.011(f)."[41] Thus, the court concluded that "the bigamy statute is 'law applicable to the case' and should have been included in the charge because the jury had to understand what 'prohibited from marrying' meant before it could determine whether Arteaga was guilty of the allegations."[42]

The court next considered whether Arteaga was egregiously harmed by the charge error. The court observed that "the jury had to understand what 'prohibited from marrying' meant, but its only direction was the consanguinity statute, which was not 'law applicable to the case.'"[43] Consequently, "the jury could not have found that Arteaga was guilty of each element of the offense

---

[40]   *Id.* (emphasis in original).

[41]   *Id.* at *17.

[42]   *Id.*

[43]   *Id.* at *19.

as alleged because the definition of 'prohibited from marrying' was not included in the jury charge."[44] The court also explained that, pursuant to section 22.011(f), "the State had to prove that Arteaga was prohibited from marrying his daughter under the bigamy statute," but "the evidence conclusively establishes the contrary: Arteaga was not married during the period of abuse, and [the child victim] could not have been married as a matter of law. Thus, the State was unable to prove the 'prohibited from marrying' element of the offense as alleged in this case."[45] Based on these and other considerations, the court concluded that Arteaga was egregiously harmed by the charge error.[46]

Although *Arteaga* involved jury-charge error, the analysis also governs the sufficiency challenge here. In reaching its conclusion that the jury charge was erroneous and that Arteaga was egregiously harmed by that error, the *Arteaga* court first determined that, when invoking Section 22.011(f) of the Penal Code—as the State did here—the State is required to prove facts that would constitute bigamy in order to elevate sexual assault from a second-degree felony to a first-degree felony.[47] In this case, as in *Arteaga*, there was no evidence presented tending to show that if Torres were to marry or claim to marry D.T., or to live with D.T. under the appearance of being married, that he would be guilty of the offense of bigamy.[48] Accordingly, following *Arteaga*, we conclude

---

[44] *Id*.

[45] *Id*. at *20.

[46] *Id*. at *21-22.

[47] *Id*. at *10.

[48] To the contrary, there is evidence in the record tending to show that Torres was single at the time of the offense. In a recorded interview of Torres by Detective Schroeder that was admitted into evidence, Schroeder asked Torres if he was married. Torres answered, "No, divorced," and he later explained to Schroeder that his marriage had ended years earlier. As for D.T., although there

13

that the evidence is insufficient to prove that Torres committed the first-degree-felony offense of sexual assault of a person whom he was prohibited from marrying under the bigamy statute.

We must now determine the appropriate remedy. Torres asserts that we should render a judgment of acquittal for Count I of the indictment, while the State asserts that we should reform the judgment of conviction to reflect a conviction for the second-degree-felony offense of sexual assault and affirm the judgment as modified. The State's proposed remedy is closer to the mark. As the *Arteaga* court explained, "a defendant should not receive the unjust windfall of an outright acquittal when there is legally sufficient evidence to prove that he is guilty of a lesser-included offense."[49] Acquitting the defendant in such a case would be a "usurpation of the jury's role as factfinder."[50] Therefore, according to the Court of Criminal Appeals:

> [A]fter a court of appeals has found the evidence insufficient to support an appellant's conviction for a greater-inclusive offense, in deciding whether to reform the judgment to reflect a conviction for a lesser-included offense, that court must answer two questions: 1) in the course of convicting the appellant of the greater offense, must the jury have necessarily found every element necessary to convict the appellant for the lesser-included offense; and 2) conducting an evidentiary sufficiency analysis as though the appellant had been convicted of the lesser-included offense at trial, is there sufficient evidence to support a conviction for that offense? If the answer to either of these questions is no, the court of appeals is not authorized to reform the judgment. But if the answers to both are yes, the court is

---

is no direct evidence in the record reflecting her marital status, her testimony that she lived with her aunt at the time of the offense could be considered circumstantial evidence that she was single at that time. At any rate, it was the State's burden to prove facts that would constitute the offense of bigamy, and the State failed to do so.

[49] *Id*. at \*23.

[50] *Id*.

14

authorized—indeed required—to avoid the "unjust" result of an outright acquittal by reforming the judgment to reflect a conviction for the lesser-included offense.[51]

In this case, the answers to both questions are yes. In the course of convicting Torres of the greater offense of sexual assault of a person whom he was prohibited from marrying, the jury must have necessarily found every element necessary to convict Torres of the lesser-included offense of sexual assault. And, as we have already explained, the evidence is sufficient to prove that Torres committed the offense of sexual assault. Accordingly, the appropriate remedy in this case is to modify the judgment of conviction to reflect a conviction for the second-degree-felony offense of sexual assault. However, contrary to what the State proposes, we are to affirm the judgment as modified only as to the finding of guilt. The Court of Criminal Appeals has repeatedly held that under these circumstances, we must remand the case to the district court for a new hearing on punishment for the lesser-included offense.[52]

---

[51] *Thornton v. State*, 425 S.W.3d 289, 300 (Tex. Crim. App. 2014).

[52] *See Griffin v. State*, 491 S.W.3d 771, 777 (Tex. Crim. App. 2016); *Rabb v. State*, 483 S.W.3d 16, 24 (Tex. Crim. App. 2016); *Nowlin v. State*, 473 S.W.3d 312, 319 (Tex. Crim. App. 2015); *Rodriguez v. State*, 454 S.W.3d 503, 508 (Tex. Crim. App. 2014); *Thornton*, 425 S.W.3d at 307; *Bowen v. State*, 374 S.W.3d 427, 432 (Tex. Crim. App. 2012).

The State asserts that no remand is necessary because Torres was sentenced to twenty years' imprisonment for the sexual-assault offense, which is the maximum amount of jail time that can be assessed for a second-degree felony. *See* Tex. Penal Code § 12.33(a). However, it remains that the jury was charged on the punishment range for a first-degree-felony offense. Twenty years' imprisonment is on the lower end of the punishment range for a first-degree felony. *See id*. § 12.32(a). We have no way to know whether the jury would have assessed the same sentence if it had been properly charged on the punishment range for a second-degree felony. Thus, a remand for a new hearing on punishment is necessary.

15

We sustain Torres's first point of error. Because we are remanding the case to the district court for a new hearing on punishment, we need not address Torres's fourth point of error, in which he argues that the court's charge on punishment was erroneous for subjecting Torres to the punishment range for a first-degree-felony offense, or Torres's seventh point of error, in which he asserts that trial counsel was ineffective in failing to object to the court's charge on punishment for that reason.[53]

**Motion for mistrial**

During Detective Schroeder's testimony, the State asked Schroeder whether he had conducted "any other interviews of family members or anyone involved or potentially involved in this case and investigation." Schroeder answered, "Yes. On May the 7th, 2013, given the totality of the circumstances thus far and the information that I received, I had to interview a potential other victim." The State then asked, "Did you just—and without going into anything that you discussed, did you interview another person?" Before Schroeder could answer, defense counsel asked to approach the bench and moved for a mistrial on the ground that the witness had "clearly put out there that there's another victim." The district court asked counsel if he was requesting an instruction to disregard. Counsel responded, "No. I don't think you can cure it. I think the proper cure is mistrial." The district court denied the motion for mistrial but, after co-counsel asked for an instruction to disregard, instructed the jury as follows: "Ladies and gentlemen, if you will, just

---

[53] *See Griffin*, 491 S.W.3d at 777 (declining to address appellant's remaining issues that asserted error during punishment proceedings, as they were "rendered moot by our reformation of the conviction and remand for a new punishment hearing"); *see also* Tex. R. App. P. 47.1.

16

disregard the last statement." In his fifth point of error, Torres asserts that the district court abused its discretion in denying his motion for mistrial.

"A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile."[54] "We review a trial court's denial of a mistrial for an abuse of discretion."[55] "An appellate court views the evidence in the light most favorable to the trial court's ruling, considering only those arguments before the court at the time of the ruling."[56] "The ruling must be upheld if it was within the zone of reasonable disagreement."[57]

A mistrial is "appropriate for a narrow class of highly prejudicial and incurable errors"[58] and is considered "an extreme remedy that should be granted only if residual prejudice remains after less drastic alternatives have been explored."[59] "Ordinarily, a prompt instruction to disregard will cure error associated with an improper question and answer, even one regarding extraneous offenses."[60] "The trial court is required to grant a motion for a mistrial only when the

---

[54] *Ladd v. State*, 3 S.W.3d 547, 567 (Tex. Crim. App. 1999).

[55] *Jenkins v. State*, 493 S.W.3d 583, 612 (Tex. Crim. App. 2016) (citing *Ocon v. State*, 284 S.W.3d 880, 884 (Tex. Crim. App. 2009)).

[56] *Ocon*, 284 S.W.3d at 884 (citing *Wead v. State*, 129 S.W.3d 126, 129 (Tex. Crim. App. 2004)).

[57] *Id*.

[58] *Wood v. State*, 18 S.W.3d 642, 648 (Tex. Crim. App. 2000).

[59] *Jenkins*, 493 S.W.3d at 612.

[60] *Ovalle v. State*, 13 S.W.3d 774, 783 (Tex. Crim. App. 2000); *Houston v. State*, 185 S.W.3d 917, 923 (Tex. App.—Austin 2006, pet. ref'd); *see Russeau v. State*, 171 S.W.3d 871, 885

17

improper question is 'clearly prejudicial to the defendant and is of such character as to suggest the impossibility of withdrawing the impression produced on the minds of the jurors.'"[61]

In this case, it would not have been outside the zone of reasonable disagreement for the district court to conclude that the exchange between the State and Schroeder did not rise to that level. The State asked Schroeder whether he had interviewed "anyone involved or potentially involved in this case and investigation." Schroeder answered that question by making what the district court could have reasonably determined to be a vague reference to a "potential other victim" that he had needed to interview. Apparently aware that Schroeder's answer was non-responsive, the State then rephrased its question, asking Schroeder whether he had interviewed "another person," and adding, "without going into anything that you discussed." Schroeder did not have an opportunity to answer this question before counsel asked to approach the bench and, shortly thereafter, the district court issued its instruction to disregard. At no point during this brief exchange did Schroeder or the State identify this person, describe the person's relationship to Torres, or explain for what reason Schroeder had to interview this person. Because nothing that was said by either the State or Schroeder during this exchange conveyed the nature of the extraneous offense, if any, or identified in any manner the person who was interviewed, it would not have been outside the zone of reasonable disagreement for the district court to conclude that this exchange was not "so

---

(Tex. Crim. App. 2005); *De La Fuente v. State*, 432 S.W.3d 415, 424 (Tex. App.—San Antonio 2014, pet. ref'd).

[61] *Simpson v. State*, 119 S.W.3d 262, 272 (Tex. Crim. App. 2003) (quoting *Wood*, 18 S.W.3d at 648).

inflammatory as to be incurable by an instruction to disregard."[62] Accordingly, on this record, we cannot conclude that the district court abused its discretion in denying Torres's motion for mistrial.[63]

We overrule Torres's fifth point of error.

**Motion to suppress**

In his sixth point of error, Torres asserts that the district court erred in denying his motion to suppress State's Exhibit 1, a recorded conversation between Torres and D.T.'s aunt, Toni. According to the undisputed facts to which the parties stipulated at the suppression hearing, the police asked Toni to surreptitiously record the conversation, Toni agreed, and the police subsequently coached Toni on what to say and provided her with the recording device. Torres argued at the suppression hearing that the recording of the conversation, which took place at his

---

[62] *See, e.g.*, *Ladd*, 3 S.W.3d at 567; *Kemp v. State*, 846 S.W.2d 289, 308 (Tex. Crim. App. 1992); *Barney v. State*, 698 S.W.2d 114, 125 (Tex. Crim. App. 1985); *De La Fuente*, 432 S.W.3d at 424; *Allen v. State*, 202 S.W.3d 364, 370-71 (Tex. App.—Fort Worth 2006, pet. ref'd); *Rogers v. State*, 200 S.W.3d 233, 237-38 (Tex. App.—Houston [14th Dist.] 2006, pet. ref'd); *Houston*, 185 S.W.3d at 923; *Drake v. State*, 123 S.W.3d 596, 603-04 (Tex. App.—Houston [14th Dist.] 2003, pet. ref'd); *Bledsoe v. State*, 21 S.W.3d 615, 624 (Tex. App.—Tyler 2000, no pet.); *see also Ortega v. State*, No. 05-12-00293-CR, 2013 Tex. App. LEXIS 4706, at *4-8 (Tex. App.—Dallas Apr. 11, 2013, pet. ref'd) (mem. op., not designated for publication); *Hill v. State*, No. 02-06-00357-CR, 2007 Tex. App. LEXIS 7759, at *18-20 (Tex. App.—Fort Worth Sept. 27, 2007, pet. ref'd) (mem. op., not designated for publication); *Keele v. State*, No. 04-02-00132-CR, 2003 Tex. App. LEXIS 4097, at *5-8 (Tex. App.—San Antonio May 14, 2003, pet. ref'd) (mem. op., not designated for publication).

[63] Torres also asserts that the instruction to disregard was ineffective or, at most, "weak" because it referred only to the "last statement" rather than Schroeder's actual testimony. However, it was Torres's responsibility to ensure that the instruction to disregard was adequate, and the record reflects that he failed to object to it or seek a clarifying instruction at the time it was given. Accordingly, Torres has failed to preserve error, if any, in the adequacy of the instruction to disregard. *See* Tex. R. App. P. 33.1; *Greer v. Miller*, 483 U.S. 756, 767 n.8 (1987); *see also Archie v. State*, 221 S.W.3d 695, 702 (Tex. Crim. App. 2007) (Keller, P.J., concurring) ("If the defendant was entitled to a better instruction, he should have requested it.").

home, violated his reasonable expectation of privacy pursuant to the Fourth Amendment.[64] The district court concluded that the recording was constitutionally permissible, and denied the motion to suppress.

We review a district court's evidentiary rulings for abuse of discretion.[65] We are to view the record "in the light most favorable to the trial court's determination, and the judgment will be reversed only if it is arbitrary, unreasonable, or 'outside the zone of reasonable disagreement.'"[66] "The prevailing party is afforded the strongest legitimate view of the evidence and all reasonable inferences that may be drawn from that evidence."[67] "When there are no written findings explaining the factual basis for the trial judge's decision, we imply findings of fact that support his ruling so long as the evidence supports those implied findings."[68] "We will sustain the lower court's ruling if it is reasonably supported by the record and is correct on any theory of law applicable to the case."[69]

---

[64] *See* U.S. Const. amend. IV; *Katz v. United States*, 389 U.S. 347, 351-53 (1967).

[65] *State v. Story*, 445 S.W.3d 729, 732 (Tex. Crim. App. 2014) (citing *State v. Dixon*, 206 S.W.3d 587, 590 (Tex. Crim. App. 2006)); *Tillman v. State*, 354 S.W.3d 425, 435 (Tex. Crim. App. 2011).

[66] *Story*, 445 S.W.3d at 732 (quoting *Dixon*, 206 S.W.3d at 590); *see Montgomery v. State*, 810 S.W.2d 372, 391-92 (Tex. Crim. App. 1991) (op. on reh'g).

[67] *State v. Weaver*, 349 S.W.3d 521, 525 (Tex. Crim. App. 2011) (citing *State v. Woodard*, 341 S.W.3d 404, 410 (Tex. Crim. App. 2011)).

[68] *Meekins v. State*, 340 S.W.3d 454, 460 (Tex. Crim. App. 2011).

[69] *Dixon*, 206 S.W.3d at 590 (citing *Romero v. State*, 800 S.W.2d 539, 543 (Tex. Crim. App. 1990)); *see Valtierra v. State*, 310 S.W.3d 442, 448 (Tex. Crim. App. 2010).

Additionally, when reviewing rulings on motions to suppress, "[t]he appellate court must apply a bifurcated standard of review, giving almost total deference to a trial court's determination of historic facts and mixed questions of law and fact that rely upon the credibility of a witness, but applying a de novo standard of review to pure questions of law and mixed questions that do not depend on credibility determinations."[70]  In this case, we review de novo the district court's application of the law to the stipulated facts.[71]

In *Katz v. United States*, the primary case relied upon by Torres at the suppression hearing, the United States Supreme Court held that the government cannot record a private conversation without a warrant when the speaker has a reasonable expectation of privacy in that conversation.[72]  However, in *United States v. White*, a plurality of the United States Supreme Court concluded that not all private conversations are protected by the Fourth Amendment.[73]  Relying on cases decided prior to *Katz*, the plurality explained:

---

[70] *Martinez v. State*, 348 S.W.3d 919, 922-23 (Tex. Crim. App. 2011) (citing *Guzman v. State*, 955 S.W.2d 85, 87-89 (Tex. Crim. App. 1997)).

[71] *See Valtierra*, 310 S.W.3d at 447; *Perez v. State*, 495 S.W.3d 374, 383 (Tex. App.—Houston [14th Dist.] 2016, no pet.); *Thompson v. State*, 408 S.W.3d 614, 621 (Tex. App.—Austin 2013, no pet.); *see also State v. Villarreal*, 475 S.W.3d 784, 798 (Tex. Crim. App. 2014) ("[B]ecause the facts are undisputed and the questions before us are matters of law, we apply a de novo standard of review."); *Kothe v. State*, 152 S.W.3d 54, 62 (Tex. Crim. App. 2004) ("On appeal, the question of whether a specific search or seizure is 'reasonable' under the Fourth Amendment is subject to de novo review.  Despite its fact-sensitive analysis, 'reasonableness' is ultimately a question of substantive Fourth Amendment law.").

[72] 389 U.S. at 351-56.

[73] 401 U.S. 745, 748-50 (1971).

21

*Hoffa v. United States*, 385 U.S. 293 (1966), which was left undisturbed by *Katz*, held that however strongly a defendant may trust an apparent colleague, his expectations in this respect are not protected by the Fourth Amendment when it turns out that the colleague is a government agent regularly communicating with the authorities. In these circumstances, "no interest legitimately protected by the Fourth Amendment is involved," for that amendment affords no protection to "a wrongdoer's misplaced belief that a person to whom he voluntarily confides his wrongdoing will not reveal it." *Hoffa v. United States*, at 302. No warrant to "search and seize" is required in such circumstances, nor is it when the Government sends to defendant's home a secret agent who conceals his identity and makes a purchase of narcotics from the accused, *Lewis v. United States*, 385 U.S. 206 (1966), or when the same agent, unbeknown to the defendant, carries electronic equipment to record the defendant's words and the evidence so gathered is later offered in evidence. *Lopez v. United States*, 373 U.S. 427 (1963).[74]

The plurality added that it was undoubtedly permissible for an informant to "write down for official use his conversations with a defendant and testify concerning them, without a warrant authorizing his encounters with the defendant and without otherwise violating the latter's Fourth Amendment rights."[75] Therefore, the plurality reasoned,

> If the conduct and revelations of an agent operating without electronic equipment do not invade the defendant's constitutionally justifiable expectations of privacy, neither does a simultaneous recording of the same conversations made by the agent or by others from transmissions received from the agent to whom the defendant is talking and whose trustworthiness the defendant necessarily risks. . . . At least there is no persuasive evidence that the difference in this respect between the electronically equipped and the unequipped agent is substantial enough to require discrete constitutional recognition, particularly under the Fourth Amendment which is ruled by fluid concepts of "reasonableness."[76]

---

[74] *Id*. at 749.

[75] *Id*. at 751.

[76] *Id*. at 751-53.

22

Although *White* was a plurality opinion, the Texas Court of Criminal Appeals subsequently adopted the plurality's reasoning and held that the recording of a private conversation by a government informant does not violate a suspect's Fourth Amendment rights, provided that the informant consented to the recording.[77] Here, it is undisputed that Toni consented to the recording. Accordingly, on this record, we cannot conclude that the district court erred in following this precedent and in denying the motion to suppress on the ground that the recording did not violate the Fourth Amendment.[78]

---

[77] *Rovinsky v. State*, 605 S.W.2d 578, 582 (Tex. Crim. App. 1980); *Saunders v. State*, 572 S.W.2d 944, 951 (Tex. Crim. App. 1978); *Thrush v. State*, 515 S.W.2d 122, 125 (Tex. Crim. App. 1974); *see Esterline v. State*, 707 S.W.2d 171, 173-74 (Tex. App.—Corpus Christi 1986, pet. ref'd); *Kizziar v. State*, 628 S.W.2d 243, 246 (Tex. App.—Fort Worth 1982, pet. ref'd); *see also Earl v. State*, No. 03-97-00229-CR, 1998 Tex. App. LEXIS 5708, at *6-7 (Tex. App.—Austin Sept. 11,1998, no pet.) (op., not designated for publication). Federal courts of appeals have also adopted the reasoning in *White*. *See, e.g.*, *United States v. Davis*, 326 F.3d 361, 365-66 (2d Cir. 2003); *United States v. Longoria*, 177 F.3d 1179, 1183 n.2 (10th Cir. 1999); *United States v. Santillo*, 507 F.2d 629, 632-35 (3d Cir. 1975).

[78] *See White*, 401 U.S. at 749-53; *Lopez*, 373 U.S. at 437-39; *Rovinsky*, 605 S.W.2d at 582. Torres asserts that in this case, unlike in *White* and other cases on which the State relies, the recording occurred in Torres's home, which is entitled to greater constitutional protection than other areas in which recorded conversations can occur. We first observe that, contrary to Torres's contention, at least one of the conversations at issue in *White* occurred in the suspect's home, and the location of the conversation did not affect the plurality's reasoning. Moreover, subsequent federal cases have held that even within a suspect's home, it is constitutionally permissible for a government informant to secretly record private conversations, so long as the informant has the suspect's permission to be inside the home and is not trespassing there. *See, e.g.*, *United States v. Hankins*, 195 Fed. Appx. 295, 301-03 (6th Cir. 2006); *United States v. Brathwaite*, 458 F.3d 376, 379-81 (5th Cir. 2006); *Davis*, 326 F.3d at 365-66; *United States v. Eschweiler*, 745 F.2d 435, 437 (7th Cir. 1984). In this case, according to the stipulated facts as described by the State at the suppression hearing, Toni was at Torres's home "with his consent or with his assent. There was no trespass into his home or anything like that." Additionally, "When [Torres] asked her eventually to leave, she does get up and leave and do what she's told at this point. So there's no actual invasion or trespass there." Thus, the record supports a finding by the district court that Toni had permission to be at Torres's home during the conversation.

We overrule Torres's sixth point of error.

**Ineffective assistance of counsel**

In his remaining points of error, Torres asserts that he received ineffective assistance of counsel during trial. Specifically, in his eighth point of error, Torres asserts that counsel was deficient in failing to object to evidence tending to show that Torres had retained counsel during the investigation. In his ninth point of error, Torres asserts that counsel was deficient in failing to object to the admissibility of State's Exhibit 3, Detective Schroeder's post-arrest interview of Torres, because, according to Torres, it was obtained in violation of his right to counsel.[79]

"Ineffective-assistance-of-counsel claims are governed by the familiar *Strickland* framework: To prevail, the defendant must show that counsel's performance was deficient and that this deficient performance prejudiced the defense."[80] "An attorney's performance is deficient if it is not within the range of competence demanded of attorneys in criminal cases as reflected by prevailing professional norms, and courts indulge in a strong presumption that counsel's conduct was *not* deficient."[81] "A defendant suffers prejudice if there is a reasonable probability that, absent the deficient performance, the outcome [of the proceeding] would have been different."[82] "A reasonable

---

[79] As we have already explained, Torres's seventh point of error, in which he asserts that counsel was deficient in failing to object to the court's charge on punishment, has been rendered moot by our disposition of Torres's first point of error.

[80] *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013) (citing *Strickland v. Washington*, 466 U.S. 668, 687 (1984)).

[81] *Id*. at 307-08 (emphasis in original).

[82] *Id*. (citing *Strickland*, 466 U.S. at 694).

24

probability is a probability sufficient to undermine confidence in the outcome."[83] "It will not suffice for Appellant to show 'that the errors had some conceivable effect on the outcome of the proceeding.'"[84] "Rather, he must show that 'there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt.'"[85]

We first address counsel's alleged failure to object to evidence tending to show that Torres had retained counsel during the investigation. The record reflects that Detective Schroeder interviewed Torres on two occasions. Both interviews were recorded and admitted into evidence as State's Exhibits 2 and 3. At the end of the first interview, as reflected in State's Exhibit 2, Torres could be heard cutting off the interview and telling Schroeder, "I'll tell you what. You can direct all this to my lawyer. . . . The rest can be directed to my lawyer if there is anything else." Counsel did not object to this evidence. Nor did counsel object when the State later elicited testimony from Schroeder that Torres had invoked his right to counsel during the second interview, after he had been arrested.

According to Torres, the above evidence was inadmissible pursuant to Article 38.38 of the Code of Criminal Procedure, which provides, "Evidence that a person has contacted or retained an attorney is not admissible on the issue of whether the person committed a criminal offense. In a criminal case, neither the judge nor the attorney representing the state may comment on the fact that the defendant has contacted or retained an attorney in the case." However, evidence

---

[83] *Id.*

[84] *Perez v. State*, 310 S.W.3d 890, 894 (Tex. Crim. App. 2010) (quoting *Strickland*, 466 U.S. at 693).

[85] *Id.* (quoting *Strickland*, 466 U.S. at 695).

and statements tending to show that a person did not wish to speak to the police in the absence of counsel are more properly characterized as "an attempt by [the suspect] to convey his desire to remain silent."[86] Pre-arrest silence in response to police questioning is admissible.[87] Thus, even if counsel had objected to the evidence of Torres terminating the first interview, the district court would not have abused its discretion in overruling the objection, and counsel cannot be deficient for failing to object to admissible evidence.[88] Moreover, to the extent that counsel should have objected to evidence tending to show that Torres had invoked his right to counsel following his arrest, we cannot conclude on this record that there is a reasonable probability that the result of the proceeding would have been different if counsel had objected, particularly in light of the other evidence in the record, summarized above, tending to show that Torres had admitted to having sex with his daughter.

Torres next contends that counsel should have objected to State's Exhibit 3, the recording of Torres's post-arrest interview with Schroeder. According to Torres, he had invoked his right to counsel at the end of his pre-arrest interview, when he asked Schroeder to contact his lawyer,

---

[86] *See State v. Lee*, 15 S.W.3d 921, 923-24 (Tex. Crim. App. 2000), *overruled on other grounds by Ex parte Lewis*, 219 S.W.3d 335 (Tex. Crim. App. 2007); *see also Segovia v. State*, No. 14-08-00176-CR, 2009 Tex. App. LEXIS 4559, at *21-22 (Tex. App.—Houston [14th Dist.] 2009, pet. ref'd) (mem. op., not designated for publication); *Dinsmore v. State*, No. 14-06-01089-CR, 2008 Tex. App. LEXIS 3730, at *7-10 (Tex. App.—Houston [14th Dist.] May 20, 2008, no pet.) (mem. op., not designated for publication).

[87] *See Waldo v. State*, 746 S.W.2d 750, 755 (Tex. Crim. App. 1988); *Rosas v. State*, 76 S.W.3d 771, 776 (Tex. App.—Houston [1st Dist.] 2002, no pet.).

[88] *See Ex parte Jimenez*, 364 S.W.3d 866, 887 (Tex. Crim. App. 2012); *Ex parte Martinez*, 330 S.W.3d 891, 901 (Tex. Crim. App. 2011); *Ex parte White*, 160 S.W.3d 46, 53 (Tex. Crim. App. 2004); *Muniz v. State*, 851 S.W.2d 238, 258 (Tex. Crim. App. 1993); *Cadoree v. State*, 331 S.W.3d 514, 529 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd); *Hollis v. State*, 219 S.W.3d 446, 463 (Tex. App.—Austin 2007, no pet.); *Cooper v. State*, 707 S.W.2d 686, 689 (Tex. App.—Houston [1st Dist.] 1986, pet. ref'd).

26

and, in Torres's view, that invocation "carried over" into the second interview, which occurred approximately one week later. Thus, according to Torres, after he had terminated the first interview, no further questioning of Torres by the police was permitted, and therefore the second interview was initiated in violation of Torres's Fifth Amendment right to counsel.

However, as the State observes, Torres's argument misconstrues the nature of the Fifth Amendment right to counsel, which applies only to custodial interrogation.[89] The United States Supreme Court has "never held that a person can invoke his *Miranda* rights anticipatorily, in a context other than 'custodial interrogation.'"[90] The record supports a finding by the district court that during Torres's first interview, when he referred Schroeder to his lawyer, he was not in custody.[91] Consequently, Torres could not have invoked his Fifth Amendment right to counsel at that time. Therefore, the district court would not have abused its discretion in concluding that the police did not violate Torres's Fifth Amendment right to counsel when it subsequently initiated the second

---

[89] *See Pecina v. State*, 361 S.W.3d 68, 74-76 (Tex. Crim. App. 2012).

[90] *McNeil v. Wisconsin*, 501 U.S. 171, 182 n.3 (1991).

[91] Schroeder testified that Torres drove himself to the police station for the first interview, that Torres was told that he was free to leave and was not under arrest, that the door to the interview room was not locked, and that Torres was allowed to terminate the interview and, upon leaving, was again told that he was not under arrest.

interview following Torres's arrest, approximately one week later.[92]  Accordingly, because State's Exhibit 3 was admissible, counsel was not deficient in failing to object to it.[93]

We overrule Torres's eighth and ninth points of error.

## CONCLUSION

We modify Torres's judgment of conviction for the first-degree felony offense of sexual assault in a prohibited relationship to reflect that he was convicted of the second-degree felony offense of sexual assault, affirm the judgment as modified as to the finding of guilt, reverse the part of the judgment imposing sentence, and remand to the district court for a new punishment hearing for that offense.  We affirm Torres's judgment of conviction for the offense of prohibited sexual conduct.

_____

Bob Pemberton, Justice

Before Chief Justice Rose, Justices Pemberton and Field

Count 1: Modified and, as Modified, Affirmed in part; Reversed and Remanded in part

Count 2: Affirmed

Filed:   July 21, 2017

Do Not Publish

_____

[92]  We also observe that the record supports a finding by the district court that there was no violation of Torres's Fifth Amendment right to counsel after the initiation of the second interview. Schroeder testified that he had read Torres his *Miranda* warnings before asking him any questions, that Torres subsequently waived his *Miranda* rights, and that, when Torres later invoked his Fifth Amendment right to counsel, the interview ended.

[93]  *See Jimenez*, 364 S.W.3d at 887; *Martinez*, 330 S.W.3d at 901; *White*, 160 S.W.3d at 53.